IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RAMON M. LIZ, : | |
|     Plaintiff, : | |
| : | |
| v. : | CIVIL ACTION NO. 22-CV-0396 |
| : | |
| PENNSYLVANIA DEPARTMENT OF : | |
| CORRECTIONS, *et al.*, : | |
|     Defendants. : | |

## MEMORANDUM

**YOUNGE, J.**                                                                                     **April 4, 2022**

*Pro se* Plaintiff Ramon M. Liz, an inmate at SCI-Phoenix, filed this civil rights action pursuant to 42 U.S.C. § 1983. Liz asserts Eight Amendment claims related to injuries he sustained using the prison showers. He names as Defendants the Pennsylvania Department of Corrections ("DOC"), three grievance coordinators involved in the denial of his grievance requests, two maintenance workers, and the superintendent of SCI Phoenix. (Compl. at 2-4, 7.)[1] He sues all the individual defendants in their individual and official capacities. Liz also filed a Motion to Proceed *in forma pauperis* and has submitted a copy of his institutional account statement. For the following reasons, the Court will grant Liz leave to proceed *in forma pauperis* and dismiss his Complaint in part with prejudice and in part without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). Because some of Liz's claims will be dismissed without prejudice, he will be granted leave to file an amended complaint to attempt to cure the defects discussed below.

---

[1] The Court adopts the pagination supplied by the CM/ECF docketing system.

I.      **FACTUAL ALLEGATIONS**

Liz alleges that he suffered injuries on two separate occasions using the same "handicap shower on HB Block." (Compl. at 5-6.) The first incident occurred on February 24, 2021, when Liz "slipped and fell out of the shower." (*Id*. at 6, 7.) Liz alleges that he fell because Defendant Rickson, a plumber for the DOC, "did not keep up the maintenance of the drainage of the handicap shower." (*Id*. at 4, 6.) After his fall in the shower, Liz was "taken to medical in a wheelchair," where a doctor took pictures of his neck, left shoulder, arm, and left knee. (*Id*. at 7.) Liz continued to receive medical treatment for his injuries through August 2021, including evaluations, pain injections, and physical therapy. (*Id*. at 8.) Liz states that in August he refused to go to physical therapy due to the pain and "was assigned a wheelchair." (*Id*.) He alleges that he requested an MRI at this time, but that the request was denied. (*Id*.)

The second shower incident occurred on September 9, 2021 in the same handicap shower. (*Id*. at 5.) Liz was "sitting on the metal handicap shower, fold out seat" and "went to grab the safety bar on the shower wall" when it came off, causing Liz to "sw[i]ng out of the shower, pull [his] left arm . . . [and] slip and hit [his] knees." (*Id*. at 7-8.) Liz states that he "crawled to [his] wheelchair in pain" and told a corrections officer and sergeant about what happened and that he was experiencing pain in his "neck, left arm, shoulder, and [] knee." (*Id*. at 8.) Liz was sent to the medical department where he was evaluated and provided pain medication. (*Id*.) Liz requested an MRI, which was denied. (*Id.* at 9.) Liz alleges that the injuries he sustained during the September 9 shower incident were caused by Defendant Mike Boykins, a "repair man" for the DOC, who did "not install[] the safety bar on the handicap wall correctly." (*Id*. at 3, 6.)

Liz submitted numerous grievances and grievance appeals related to the conditions of the handicap shower on his block, including requests for rubber mats or strips to help reduce the slipperiness. (*See id*. at 19, 21, 23, 24, 26, 28, 29, 31.) In some of these grievances and appeals, he complains about not getting proper medical care for injuries he allegedly sustained from the falls in the handicap shower. (*See id*. at 24, 36, 28, 29, 31.) Nearly all of his grievance requests were denied. (*Id*. at 20, 22, 25, 27, 30, 33.) Liz names as Defendants individuals who work for the DOC and who were involved in the denial of his grievance requests and appeals, including D. Varner, the "Chief Grievance Officer," Keri Moore, the "acting agent for D. Varner, and K. Owens, a grievance coordinator. (*Id*. at 2-3.) Liz also names as a Defendant Jaime Sorber, the Superintendent at SCI Phoenix. (*Id*. at 4.)

Based on these allegations, Liz asserts claims under the Eight Amendment, alleging that Defendants had a "deliberate indifference or callous disregard for prisoners['] safety." (*Id*. at 3.) Liz requests money damages from each Defendant. (*Id*. at 10.)[2]

## II.     STANDARD OF REVIEW

The Court grants Liz leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action.[3] Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether

---

[2] Attached to Liz's Complaint are grievance requests, appeals, and responses, as well as a witness statement. (Compl. at 19-34.)

[3] However, Liz will be obligated to pay the filing fee in installments in accordance with the Prison Litigation Reform Act. *See* 28 U.S.C. § 1915(b).

the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). "At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'" *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678. As Liz is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F. 4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

### III. DISCUSSION

#### A. Eighth Amendment Claims under § 1983

Liz asserts Eighth Amendment constitutional claims for deliberate indifference under 42 U.S.C. § 1983. Section 1983 provides in part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Liz has failed to allege plausible § 1983 claims against the named Defendants.

1. **The DOC**

Liz names the DOC as a Defendant, alleging that it "is vicariously liable for the conditions at SCI Phoenix, and for the acts of its employees, agents and/or servants." (Compl. at 4.) However, the Eleventh Amendment bars suits against a state and its agencies, such as the DOC, in federal court when the state has not waived that immunity, *id.*, and the Commonwealth of Pennsylvania has not waived that immunity. *See* 42 Pa. Cons. Stat. § 8521(b). Since the DOC is an agency of the Commonwealth of Pennsylvania, it is entitled to Eleventh Amendment immunity and is not a "person" for purposes of § 1983. *Lavia v. Pennsylvania, Dep't of Corr.*, 224 F.3d 190, 195 (3d Cir. 2000) (explaining that, "[b]ecause the Commonwealth of Pennsylvania's Department of Corrections is a part of the executive department of the Commonwealth, it shares in the Commonwealth's Eleventh Amendment immunity" and is also not considered a person for purposes of § 1983); *see also Pettaway v. SCI Albion*, 487 F. App'x 766, 768 (3d Cir. 2012) (*per curiam*) ("[A]s a state agency and the prison it administers, the Department of Corrections and SCI-Albion are not 'persons' and thus cannot be sued under 42 U.S.C. § 1983."). The Court will therefore dismiss the § 1983 claims against the DOC with prejudice.

2. **Official Capacity Claims**

Liz asserts claims against all the individual Defendants – Varner, Moore, Owens, Boykins, Rickson and Sorber – in their official capacities. "Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (quoting *Monell v. N.Y.C. Dept. of Soc. Servs.*, 436 U.S. 658, 690, n.55 (1978)). Thus, official capacity claims against the individual defendants here — all of whom are employed by the DOC — are really claims against

the DOC, who is shielded from § 1983 suits by Eleventh Amendment immunity. *See supra* § III.A.1; *see also Downey v. Pennsylvania Dep't of Corr.*, 968 F.3d 299, 309-10 (3d Cir. 2020) ("Eleventh Amendment immunity bars actions for retroactive relief against state officers acting in their official capacity."). Accordingly, the Court will dismiss with prejudice Liz's official capacity claims against Varner, Moore, Owens, Boykins, Rickson and Sorber because they are barred by the Eleventh Amendment.

### 3. Individual Capacity Claims against Varner, Moore, and Owens

Liz asserts claims against Varner, Moore, and Owens, based on their handling of his grievances about the handicap shower. He alleges that Defendants "denied [him] any relief" on his grievances or on the appeals of those grievances and rejected his request for an MRI. (Compl. at 4, 6.) Section 1983 claims based generally on a defendant's handling of grievances fail because "[p]rison inmates do not have a constitutionally protected right to a grievance process." *Jackson v. Gordon*, 145 F. App'x 774, 777 (3d Cir. 2005) (*per curiam*); *see also Caldwell v. Beard*, 324 F. App'x 186, 189 (3d Cir. 2009) (*per curiam*). Accordingly, Liz's allegations that Defendants simply denied his grievances or appeals do not give rise to a plausible basis for a constitutional claim and will be dismissed. *See Woods v. First Corr. Med. Inc.*, 446 F. App'x 400, 403 (3d Cir. 2011) (*per curiam*) ("[B]ecause a prisoner has no free-standing constitutional right to an effective grievance process, [a prisoner] cannot maintain a constitutional claim . . . based upon his perception that [the defendant] ignored and/or failed to properly investigate his grievances." (citing *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991))).

To the extent that Liz asserts deliberate indifference claims against Varner, Moore, and Owens based on allegations that they denied him an MRI, those claims will also be dismissed. To state a constitutional claim based on the failure to provide medical treatment, a prisoner must

allege facts indicating that prison officials were deliberately indifferent to his serious medical needs.  *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994).  A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Id*. at 837.  "A medical need is serious, . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention."  *Monmouth Cty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotations omitted).

Notably, Liz does not specifically name any medical staff personally involved in the treatment, or lack of treatment of his alleged injuries.  With respect to the non-medical Defendants he names, Liz fails to state a plausible deliberate indifference claim based upon allegations that they rejected his grievance requests for an MRI.  Liz has not alleged that Varner, Moore, and Owens were personally involved with or had any knowledge of his medical care.  *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (stating that "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable).  Moreover, ever since his first incident in the handicap shower, Liz concedes he has been under the care of medical professionals.  "If a prisoner is under the care of medical experts . . . , a non-medical prison official will generally be justified in believing that the prisoner is in capable hands."  *See Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004); *see also Carter v. Smith*, 483 F. App'x 705, 708 (3d Cir. 2012) (*per curiam*) ("Prison officials cannot be held to be deliberately indifferent merely because they did not respond to the medical complaints of a prisoner who was

already being treated by the prison medical staff."). Accordingly, his deliberate indifference claims against Varner, Moore, and Owens will be dismissed without prejudice.

### 4. Individual Capacity Claims against Boykins and Rickson

Liz alleges that Boykins did not properly install the safety bar in the handicap shower and that both Boykins and Rickson did not maintain the handicap shower. Because Liz used the form complaint available for prisoners to bring civil rights claims, the Court understands Liz to be asserting an Eighth Amendment claim based on the conditions of his confinement. "To determine whether prison officials have violated the Eighth Amendment, we apply a two-prong test: (1) the deprivation must be 'objectively, sufficiently serious; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities'; and (2) the prison official must have been 'deliberate[ly] indifferen[t] to inmate health or safety.'" *Porter v. Pennsylvania Dep't of Corr.*, 974 F.3d 431, 441 (3d Cir. 2020) (quoting *Farmer*, 511 U.S. at 834). Such necessities include food, clothing, shelter, medical care, and reasonable safety. *Tillman v. Lebanon Cty. Corr. Facility*, 221 F.3d 410, 418 (3d Cir. 2000). However, a claim based on negligence is insufficient to allege a claim under § 1983. *See Farmer*, 511 U.S. at 835; *Daniels v. Williams*, 474 U.S. 327, 330-31 (1986); *Davis v. Superintendent Somerset SCI*, 597 F. App'x 42, 46 (3d Cir. 2015) ("Here, the allegations contained in the amended complaint, taken as true, assert a simple negligence claim at most, and thus do not state a claim of a constitutional violation under the Eighth Amendment.").

Liz's allegations that the handicap shower was slippery, not maintained well, and did not have a properly functioning safety bar, at worst allege negligence on the part of Boykins and Rickson, which is insufficient to state a plausible Eighth Amendment violation. *See Bacon v. Carroll*, 232 F. App'x 158, 160 (3d Cir. 2007) (finding allegations that an inmate slipped and fell

on a wet floor amounted "merely to negligence" and therefore were "not actionable under § 1983"); *Hall-Wadley v. Maint. Dep't*, 386 F. Supp. 3d 512, 517 & n.27 (E.D. Pa. 2019) ("[M]any . . . courts, including the [United States Court of Appeals for the] Third Circuit, have reasoned that slip-and-fall injuries stemming from slippery prison surfaces are more within the realm of ordinary negligence, and thus are not sufficient to state a claim for a deprivation of an Eighth Amendment right."); *Richie v. Jones*, No. 13-0054, 2014 WL 4058951, at *5 (M.D. Pa. Aug. 14, 2014) ("Plaintiff has failed to state an Eighth Amendment conditions of confinement claim for failing to adequately affix the shower floor with slip guards or rubber mats . . . [the allegation] indicates negligence at worst, but negligence does not rise to the level of a constitutional violation."). Accordingly, Liz's § 1983 claims against Boykins and Rickson will be dismissed without prejudice.

### 5. Individual Capacity Claims against Sorber

Liz asserts Eighth Amendment claims against Sorber based on Sorber's involvement in denying Liz's grievance requests in connection with the conditions of the handicap shower and his medical treatment. (Compl. at 7.) As discussed above, Liz cannot maintain a constitutional claim against Sorber based on his involvement in overseeing the grievance process or denying Liz's grievance requests. *See supra* § III.A.3; *see also Brown v. Nicholson*, No. 18-3328, 2020 WL 610523, at *6 (E.D. Pa. Feb. 7, 2020) (granting motion to dismiss § 1983 claim where prison superintendent's upholding of grievance denial on appeal did "not give rise to a constitutional violation" and plaintiff failed to allege any other personal involvement). Liz also cannot maintain a claim against Sorber based on an alleged deliberate indifference to serious medical need. *See supra* § III.A.3. Liz has not alleged that Sorber was personally involved in the denial of his medical care, other than through Liz's grievance requests and appeals, which is

insufficient to allege personal involvement plausibly. *See Curtis v. Wetzel*, 763 F. App'x 259, 263 (3d Cir. 2019) (*per curiam*) ("The District Court properly determined that Defendants Wenerowicz, Lewis, and Shaylor – who participated only in the denial of Curtis' grievances – lacked the requisite personal involvement [in the conduct at issue]."). Moreover, Liz was receiving medical treatment for his alleged injuries and Sorber was entitled to rely on the medical providers' care of Liz. *See Robertson v. Gilmore*, 850 F. App'x 833, 836 (3d Cir. 2021) ("Non-medical prison officials cannot 'be charge[d] with the Eighth Amendment scienter requirement of deliberate indifference' when the 'prisoner is under the care of medical experts." (quoting *Pearson v. Prison Health Serv.*, 850 F.3d 526, 543 (3d Cir. 2017)).

Liz also alleges that Sorber "did not enforce the proper safety and medical care of an inmate." (Compl. at 7.) The Court construes this allegation as asserting § 1983 claims against Sorber as a supervisor at SCI Phoenix. There are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 135 S. Ct. 2042 (2015). First, a supervisor may be liable if he or she "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Id*. (quoting *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)). "Second, a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Id*.

Liz has failed to allege facts supporting a plausible supervisory liability claim against Sorber. Liz has not stated what Sorber did or did not do to cause his alleged constitutional harm.

Specifically, he does not allege what involvement Sorber had, if any, in the maintenance of the handicap shower on his block or in the denial of Liz's medical care. He also does not allege any policy, practice, or custom established by Sorber with deliberate indifference to his medical needs or to his safety in connection with the prison showers. Accordingly, the deliberate indifference claims against Sorber will be dismissed without prejudice.

### B. Claims Under the Americans with Disabilities Act and the Rehabilitation Act

Liberally construing the Complaint, it is possible that Liz also intended to assert claims against the DOC under Title II of the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act ("RA") based on the conditions of the handicap shower.[4]

Claims under Title II of the ADA and Section 504 of the RA are analyzed together "because the substantive standards for determining liability are the same." *Furgess v. Pennsylvania Dep't of Corr.*, 933 F.3d 285, 288 (3d Cir. 2019). To state a plausible claim under either the ADA or the RA, Liz "must allege that he is a qualified individual with a disability, who was precluded from participating in a program, service, or activity, or otherwise was subject

---

[4] Section 504 of the RA provides:

> No otherwise qualified individual with a disability in the United States ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . .

29 U.S.C. § 794(a).

Section 202 of the ADA provides:

> Subject to the provisions of this title, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132.

to discrimination, by reason of his disability." *Id*. at 288-89.[5]  Liz must also allege "intentional discrimination under a deliberate indifference standard because he seeks compensatory damages." *Id*. (citing *H. ex rel. Durrell v. Lower Merion Sch. Dist*., 729 F.3d 248, 263 (3d Cir. 2013)).  To allege deliberate indifference, Liz must assert that (1) the defendant had "knowledge that a federally protected right is substantially likely to be violated," and (2) "the prison failed to act despite that knowledge." *Id*. at 292 (internal quotation marks omitted).  To allege that he is a "qualified individual with a disability," Liz must assert that he has a "disability" which is defined as "a physical or mental impairment that substantially limits one or more major life activities of such individual. . . ." 42 U.S.C. § 12102(1)(A).[6]  "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." *Id*. at § 12101(2)(A).

The proper defendant under a Title II ADA claim is the public entity or an individual who controls or directs the functioning of the public entity.  *See Emerson v. Thiel College*, 296 F.3d 184, 189 (3d Cir. 2002).  The proper Defendant under an RA claim is the public entity receiving federal assistance. *A.W. v. Jersey City Pub. Sch*., 486 F.3d 791, 804 (3d Cir. 2007) (stating that "suits may be brought pursuant to Section 504 against recipients of federal financial assistance, but not against individuals").  Here, the only proper Defendant to claims under the ADA and RA would be the DOC.  Therefore, to the extent Liz seeks to allege ADA and/or RA claims against

---

[5] The Third Circuit has concluded that the "provision of showers is a part of the programs, activities, or services referred to in the ADA and the RA." *Furgess*, 933 F.3d at 291.

[6] Due to the "parallel definitions of disability" between the ADA and the RA, Court's use them interchangeably.  *See e.g.*, *Marshall v. Sisters of Holy Fam. of Nazareth*, 399 F. Supp. 2d 597, 607 (E.D. Pa. 2005) (quoting *McDonald v. Com. of Pa., Dep't of Pub. Welfare, Polk Ctr*., 62 F.3d 92, 95 (3d Cir. 1995)).

the individual Defendants named in the Complaint, those claims will be dismissed with prejudice. Because Liz has not alleged that he is disabled or that he was precluded from using the prison showers or was otherwise subject to discrimination on account of a disability, he has failed to state plausible ADA and RA claims against the DOC. However, these claims will be dismissed without prejudice and Liz will have the opportunity to file an amended complaint to address the defects the Court has noted as to these claims.

### C. Negligence Claims

Liberally construing the Complaint, it is possible that Liz also intended to assert negligence claims in connection with the injuries he allegedly sustained using the handicap shower. Negligence claims arise under state law. The only independent basis for jurisdiction over any such claims is 28 U.S.C. § 1332(a), which grants a district court jurisdiction over a case in which "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States."[7] Section 1332(a) requires "'complete diversity between all plaintiffs and all defendants,' even though only minimal diversity is constitutionally required. This means that, unless there is some other basis for jurisdiction, 'no plaintiff [may] be a citizen of the same state as any defendant.'" *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 104 (3d Cir. 2015) (quoting *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005) and *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010) (internal footnotes omitted)). An individual is a citizen of the state where he is domiciled, meaning the state where he is physically present and intends to remain. *See Washington v. Hovensa LLC*, 652 F.3d 340, 344 (3d Cir. 2011). "[T]he domicile of a prisoner before his imprisonment

---

[7] Because the Court has dismissed Liz's federal claims, it will not exercise supplemental jurisdiction over any state law claims.

presumptively remains his domicile during his imprisonment." *Pierro v. Kugel*, 386 F. App'x 308, 309 (3d Cir. 2010).  Since the Complaint is silent on the citizenship of the parties, Liz has not met his burden for establishing a basis for diversity jurisdiction over any state claims.

## IV. CONCLUSION

For the foregoing reasons, the Court will grant Liz leave to proceed *in forma pauperis* and dismiss his Complaint in part with prejudice and in part without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim.  The § 1983 claims against the DOC and the official capacity claims against Varner, Moore, Owens, Boykins, Rickson and Sorber will be dismissed with prejudice.  The following claims are dismissed without prejudice:  all individual capacity claims against Varner, Moore, Owens, Boykins, Rickson, and Sorber; all claims against the DOC under the ADA and RA; and any negligence claims.  Because the Court cannot say at this time that Liz cannot cure the defects in those claims the Court has dismissed without prejudice, he will be granted the option of filing an amended complaint to reassert those claims.

An appropriate Order follows, which provides further instruction as to amendment.


BY THE COURT:

/s/ John Milton Younge

JOHN MILTON YOUNGE, J.