# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RAMON M. LIZ,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 22-CV-0396** |
| | : | |
| **PENNSYLVANIA DEPARTMENT OF** | : | |
| **CORRECTIONS,** *et al.*, | : | |
| **Defendants.** | : | |

## <u>MEMORANDUM</u>

**YOUNGE, J.**                                                    **SEPTEMBER 9, 2022**

*Pro se* Plaintiff Ramon M. Liz, an inmate at SCI Phoenix, filed an Amended Complaint asserting claims pursuant to 42 U.S.C. § 1983.  Specifically, Liz asserts Eighth Amendment claims related to injuries he sustained using the prison showers and the subsequent denial of medical care by prison officials and prison-contracted medical professionals.  The Court previously granted Liz leave to proceed *in forma pauperis*, screened his Complaint, and dismissed the Complaint without prejudice.  For the following reasons, the Court will dismiss Liz's Amended Complaint in part with prejudice and in part without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B).  Because some of Liz's claims will be dismissed without prejudice, he will be granted the option of filing a second amended complaint to attempt to cure the defects discussed below or proceeding only on the claims the Court determines may be served for a responsive pleading.

## I.     FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY

Liz's initial Complaint named the following Defendants:  the Pennsylvania Department of Corrections ("DOC"); D. Varner; Keri Moore; K. Owens; Mike Boykins; Mr. Rickson; and

Jamie Sorber.  (Compl. 2-4. ECF No. 2.)[1]  Liz asserted claims against these Defendants in their official and individual capacities.  He alleged that he suffered injuries on two separate occasions using the "handicap shower on HB Block."  (*Id*. at 5-6.)  He asserted Eighth Amendment deliberate indifference claims against the Defendants.

In an April 4, 2022 Memorandum and Order, the Court granted Liz leave to proceed *in forma pauperis* and dismissed his Complaint upon screening pursuant to 28 U.S.C. § 1915(e)(2)(B) for failure to state a claim.  *See Liz v. Pennsylvania Dep't of Corr.*, No. 22-0396, 2022 WL 1017620, at *6 (E.D. Pa. Apr. 4, 2022) ("the April 4 Memorandum").  First, Liz's claims against the DOC were dismissed with prejudice as the DOC is entitled to Eleventh Amendment immunity.  *Id*. at 2.[2]  Second, the Court dismissed with prejudice all official capacity claims asserted against the individual Defendants, who are also immune from suit under the Eleventh Amendment because they are employees of the DOC.  *Id*. at 3.  Third, because Liz failed to allege plausible deliberate indifference claims against Defendants Varner, Moore, and Owens involving their handling of Liz's prison grievances, these claims were also dismissed.  *Id*.  Fourth, the Court concluded that Liz failed to allege plausible Eighth Amendment claims against Boykins and Rickson, who are alleged to be responsible for maintaining the prison showers in which Liz fell and injured himself, because the allegations showed at most, negligence on the part of these Defendants, and not deliberate indifference.  *Id*. at 4.  Fifth, the claims against Defendant Sorber were dismissed because Liz failed to allege that Sorber was personally involved in the denial of his medical care other than through Liz's grievance requests and denials, which is not a sufficient basis for personal involvement.  *Id*.  Sixth, the Court concluded

---

[1] The Court adopts the pagination supplied by the CM/ECF docketing system.

[2] Liz again asserts § 1983 claims against the DOC in his Amended Complaint.  These claims will again be dismissed with prejudice for the previously stated reasons.

that to the extent Liz asserted claims under Title II of the Americans with Disabilities Act

("ADA") and Section 504 of the Rehabilitation Act ("RA") based on the conditions of the

handicap shower, those claims were not plausible because Liz did not allege that he was disabled

or was otherwise subject to discrimination on account of a disability. *Id*. at 5-6.[3]  Finally, to the

extent Liz asserted any negligence claims, they were dismissed without prejudice because he

failed to allege facts showing that the Court had diversity jurisdiction over these state law claims.

*Id*. at 6.  The Court gave Liz the opportunity to file an amended complaint to cure the defects

noted in the claims that were dismissed without prejudice.  *Id*.

   After being granted two extensions of time to do so (*see* ECF Nos. 9, 13), Liz returned

with an Amended Complaint.  (Am. Compl., ECF No. 14.)[4]  Liz names several additional

Defendants in his Amended Complaint, in addition to naming all of the same Defendants from

his initial Complaint.  In addition to the DOC, Varner, Moore, Owens, Boykins, Rickson, and

Sorber, Liz names the following other Defendants in his Amended Complaint:  (1) G. Orlando,

identified as a grievance coordinator; (2) Mr. P. Curley, (3) Mr. M.R. Kopcik, and (4) Mr.

Merrideth, each of whom are identified as a correctional officer; (5) Wellpath Health Care, an

entity that contracts with SCI Phoenix to provide medical care to inmates; (6) Mr. Riley, (7) Mr.

Goldberg, (8) Mr. Letizio, (9) Mr. Bazel, (10) Mr. DeSantis, and (11) Mr. S. Kaminsky, each of

whom are identified as a doctor; (12) Mr. Joseph Walsh, and (13) Mrs. Kim White, both of

---

[3] Liz does not assert any ADA or RA claims in his Amended Complaint.

[4] Liz attaches to his Amended Complaint Exhibits I through Exhibit P, which comprise of grievance requests and responses related to his medical care and the conditions of the handicap shower.  (Am. Compl. at 60-73.)  Liz also requests that the Court consider exhibits A through H, which he attached to his initial Complaint.  Because it appears that Liz previously submitted the original copies of grievances, responses, appeals, etc., the Court will not require him to resubmit these with his Amended Complaint.  The Court will consider Exhibits A through H, which are attached to the initial Complaint, as Exhibits A through H to the Amended Complaint.

whom are identified as a physician's assistant; (14) Mrs. B. Huner, identified as a medical supervisor; and (15) Mrs. M. Savage, identified as a head nurse.  (*Id*. at 2-9)  All of these additional Defendants are also named both in their official and individual capacities.  (*Id*.)

Liz alleges that he suffered injuries on two separate occasions using the same "handicap shower" on "HB-Block."  (*Id*. at 35.)  The first incident occurred on February 24, 2021, when Liz "slipped and fell out of the shower" because "Rickson did not keep up the maintenance of the drainage problem" of the shower.  (*Id*.)  Liz was taken to the medical department in a wheelchair and evaluated by D. Goldberg, who took x-rays and pictures of Liz's neck, left arm, shoulder, and swollen knee.  (*Id*.)  The second shower incident occurred on September 9, 2021 in the same handicap shower.  (*Id*.)  When Liz was "sitting on the metal handicap shower seat that folds out" and grabbed the safety bar on the shower wall, "it came off the wall," swinging Liz out of the shower and causing him to slip and injure his knees, left arm, and shoulder.  (*Id*.)  Liz states that he "crawled to [his] wheelchair in pain" and told the two correctional officers on that shift — M.R. Kopcik and P. Curley — what had happened and that he was experiencing pain in his neck, left arm, shoulder, and knee.  (*Id*.)  Kopcik and Curley told Liz that he would have to "wait until the next officer came on duty" and sent Liz back to his cell.  (*Id*.)  Liz alleges that he laid down in his cell "in pain for an hour" until the correctional officer on the next shift sent him to the medical department to treat his injuries.  (*Id*.)  While there, Liz was evaluated by Defendant PA Kim White, who gave Liz a "shot . . . for the pain" and sent him back to his cell with a bag of ice.  (*Id*.)  Liz did not receive an X-ray or MRI.  (*Id*.)

From the first incident in the handicap shower in February 2021 through May 2022, Liz was seen by an assortment of medical professionals employed by Wellpath for pain in his back,

neck, arm, and shoulder.  (*Id*. at 36-39.)[5]  Liz alleges that some of the Wellpath employees

denied his repeated requests for an MRI or other diagnostic tests.  (*Id*. at 35-39.)  He alleges that

other Wellpath employees were unprofessional and did not treat him with respect.  (*Id*. at 38-39.)

He asserts Eighth Amendment claims against the Wellpath employees based on their treatment

of him or their alleged lack of adequate medical care.  (*Id*. at 35-39.)  Liz also submitted

numerous grievances during the relevant time period about his medical care and about the

conditions of the handicap showers.  (Compl. at 19-33; Am. Compl. at 61-73.)  Liz names as

Defendants, individuals who were involved in the denial of his grievance requests and appeals.

Based on these allegations, Liz asserts Eighth Amendment claims for deliberate

indifference to his safety and deliberate indifference to his medical needs.  Liz also appears to

assert state law claims for negligence and malpractice.  However, as explained later, he does not

tie these state law tort claims to any specific Defendant.  For relief, Liz seeks money damages

and a declaration that Defendants violated his rights.[6]

## II.    STANDARD OF REVIEW

As Liz is proceeding *in forma pauperis*, 28 U.S.C. § 1915(e)(2)(B)(ii) applies, which

requires the Court to dismiss the Amended Complaint if it fails to state a claim.  Whether a

complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard

---

[5] Additional allegations from the Amended Complaint supporting Liz's claims against each Wellpath Defendant are set forth infra at III.E, where the Court discusses Liz's § 1983 claims against these defendants.

[6] Liz's request for a declaration is not appropriate based on the allegations in the Amended Complaint.  This is because a "[d]eclaratory judgment is inappropriate solely to adjudicate past conduct," and is also not "meant simply to proclaim that one party is liable to another."  *Corliss v. O'Brien*, 200 F. App'x 80, 84 (3d Cir. 2006) (*per curiam*); *see also Taggart v. Saltz*, No. 20-3574, 2021 WL 1191628, at *2 (3d Cir. Mar. 30, 2021) (*per curiam*) ("A declaratory judgment is available to define the legal rights of the parties, not to adjudicate past conduct where there is no threat of continuing harm.").  Because Liz's request for a declaration only seeks to adjudicate past conduct, his request for a declaration will be dismissed.

applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). "At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'" *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678. As Liz is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F. 4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

## III.   DISCUSSION

Liz asserts Eighth Amendment claims for deliberate indifference to his safety and to his medical needs pursuant to § 1983, the vehicle by which federal constitutional claims may be brought in federal court. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). In a § 1983 action, the personal involvement of each defendant in the alleged constitutional violation is a required element, and, therefore, a plaintiff must allege how each defendant was involved in the events and occurrences giving rise to the claims. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998).

## A.        The DOC and Official Capacity Claims against SCI Phoenix Defendants

Liz again names the DOC as a Defendant, alleging that it "is vicariously liable for the conditions at the SCI Phoenix . . . and for the acts of its employees, agents and/or servants." (Am. Compl. at 4.)  The Court already dismissed all § 1983 claims against the DOC, explaining in the April 4 Memorandum that "the Eleventh Amendment bars suits against a state and its agencies, such as the DOC, in federal court when the state has not waived that immunity, and the Commonwealth of Pennsylvania has not waived that immunity."  *Liz*, 2022 WL 1017620, at *2 (citations omitted); *see also id*. ("Since the DOC is an agency of the Commonwealth of Pennsylvania, it is entitled to Eleventh Amendment immunity and is not a "person" for purposes of § 1983.").  All § 1983 claims against the DOC are again dismissed with prejudice.

Liz also asserts claims against all SCI Phoenix prison officials in their official capacities.[7] Previously, the Court dismissed the official capacity claims against the SCI Phoenix prison officials named in the initial Complaint (Varner, Boykins, Moore, Owens, Rickson, and Sober). The Court reasoned that official capacity suits are really suits against the employing agency and thus official capacity claims against SCI Phoenix officials employed by the DOC are really claims against the DOC, which is shielded from § 1983 liability by the Eleventh Amendment. *Id*. (citing *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) and *Downey v. Pennsylvania Dep't of Corr.*, 968 F.3d 299, 309-10 (3d Cir. 2020)).  In his Amended Complaint, Liz names additional SCI Phoenix prison officials Orlando, Curley, Kopcik, and Merrideth.  The official capacity claims against these Defendants are dismissed with prejudice for the reasons explained by the Court in the April 4 Memorandum.

---

[7] The medical professionals Liz names in his Amended Complaint are allegedly employed by Wellpath and not the DOC and thus official capacity claims against them will be addressed separately.  *See infra* at § III.A.3.

**B.** **Claims Against Wellpath and Related Official Capacity Claims against Wellpath Employees**

Liz also names as a Defendant Wellpath, a private company that contracts with SCI Phoenix to provide medical care to inmates, as well as various Wellpath employees:  Doctors Riley, Goldberg, Bazel, DeSantis, Kaminsky; PAs Walsh and White; supervisor Huner; and Nurse Savage.  He asserts claims against all Wellpath Defendants in their official capacities as well as in their individual capacities.  Official capacity claims against Wellpath employees are really duplicate claims against Wellpath.  *See Kentucky*, 473 U.S. at 165-66 ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" (quoting *Monell v. N.Y.C. Dept. of Soc. Servs.*, 436 U.S. 658, 690, n. 55 (1978))).  A private corporation under contract to provide prison health services such as Wellpath may be liable under § 1983 only if that entity's policies or customs caused the alleged constitutional violation.  *See Monell*, 436 U.S. 658, 694 (1978); *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 583-84 (3d Cir. 2003).  For such a claim to be plausible, the plaintiff "must identify [the] custom or policy, and specify what exactly that custom or policy was." *McTernan v. City of York*, 564 F.3d 636, 658 (3d Cir. 2009).

A plaintiff may also state a plausible basis for liability against an entity like Wellpath by "alleging failure-to-supervise, train, or discipline . . . [and alleging facts showing] that said failure amounts to deliberate indifference to the constitutional rights of those affected."  *Forrest v. Parry*, 930 F.3d 93, 106 (3d Cir. 2019).  In the context of a contract medical provider, the provider's "failure to train or supervise must amount to a policy or custom in disregard of an obvious risk that its employees or agents would commit constitutional violations."  *Ponzini v. PrimeCare Med., Inc.*, 269 F. Supp. 3d 444, 526 (M.D. Pa. 2017), *aff'd in part, vacated in part on other grounds sub nom. Ponzini v. Monroe Cty.*, 789 F. App'x 313 (3d Cir. 2019).  Only in

the narrowest of circumstances can a failure to train or supervise "said to be so obvious, that failure to do so could properly be characterized as deliberate indifference to constitutional rights even without a pattern of constitutional violations." *Id*. (quoting *Thomas v. Cumberland Cty.*, 749 F.3d 217, 223 (3d Cir. 2014) (internal citation and quotation marks omitted). Liz does not tie any of the claimed violations of his constitutional rights to a Wellpath policy or custom or to Wellpath's failure to train, supervise, or discipline its staff. Accordingly, the Amended Complaint does not state a claim against Wellpath or Wellpath employees in their official capacities. The claims against Wellpath will be dismissed without prejudice. The official capacity claims against the Wellpath employees will be dismissed with prejudice.

### C.   Claims Related to the Handling of Grievances against Sorber, Varner, Moore, Owens, Orlando, Savage, and Huner

As he did in his initial Complaint, Liz asserts claims against Defendants Sorber, Varner, Moore, Owens, Orlando, Savage, and Huner based on their handling of his prison grievances related to the conditions of the handicap shower and his requests for medical care.[8] Liz simply states that these Defendant "denied" or "rejected" his grievances and in support of the claims, submits the grievances and denials as exhibits. Liz alleges that Owens, who is identified as a Grievance Coordinator, denied at least three of Liz's grievances about the poor conditions of the handicap shower stall in which he fell. (Am. Compl. at 36.; Compl. at 20, 22.) Owens and Savage denied Liz's grievance about correctional officer Merrideth being "real nasty" to him. (Am. Compl. at 36.) Superintendent Sorber denied a grievance appeal in which Liz requested an

---

[8] The only allegations about Sorber in the Amended Complaint are about his involvement in denying Liz's grievance appeal. Despite being provided an opportunity to amend his claims against Sorber, Liz has included no allegations to support supervisory liability against Sorber. *See Liz*, 2022 WL 1017620, at *5 (explaining the two ways to allege a plausible supervisory liability claim).

MRI for his injuries and a medical professional to evaluate the "stimulation device" implanted in his lower back.  (*Id*. at 37.)  Moore and Varner, who are identified as grievance officers at DOC's central office, rejected Liz's final appeal of Superintendent Sorber's denial, concluding that Sorber's "appeal response" was "appropriate."  (Am. Compl. at 37; Compl. at 30.)  Orlando denied Liz's grievance about the pain he was experiencing in his back, neck, and shoulder. (Compl. at 25.) Savage denied Liz's grievance request to be placed in a handicap cell.  (Am. Compl. at 73.)  Huner denied Liz's grievance about Dr. Letizio "being disrespectful."  (*Id*. at 68.)

As the Court explained in the April 4 Memorandum, "Section 1983 claims based generally on a defendant's handling of grievances fail because '[p]rison inmates do not have a constitutionally protected right to a grievance process.'"  *Liz*, 2022 WL 1017620, at *3 (quoting *Jackson v. Gordon*, 145 F. App'x 774, 777 (3d Cir. 2005) (*per curiam*) and *Caldwell v. Beard*, 324 F. App'x 186, 189 (3d Cir. 2009) (*per curiam*)); *see also See Woods v. First Corr. Med. Inc*., 446 F. App'x 400, 403 (3d Cir. 2011) (*per curiam*) ("[B]ecause a prisoner has no free-standing constitutional right to an effective grievance process, [a prisoner] cannot maintain a constitutional claim . . . based upon his perception that [the defendant] ignored and/or failed to properly investigate his grievances." (citing *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991))). The Court rejected similar claims asserted against Sorber, Varner, Moore, and Owens in Liz's initial Complaint because "Liz's allegations that Defendants simply denied his grievances or appeals do not give rise to a plausible basis for a constitutional claim and will be dismissed." *Liz*, 2022 WL 1017620, at *3.  In his Amended Complaint, Liz again alleges that Defendants denied his grievances.  Liz also alleges in conclusory fashion that each Defendant — Sorber, Varner, Moore, Owens, Orlando, Savage, and Huner — "knew about [his] immediate medical needs and did nothing to ensure that [his] medical needs were met."  (Am. Compl. at 15, 16, 20-

22, 32, 33.)  However, Liz does not allege any facts about these Defendants' involvement in the violations of his constitutional rights aside from their participation in the review of this grievances.  Such conclusory statements are not sufficient to allege a defendant's personal involvement in the alleged constitutional wrongs.  *See Mincy v. Chmielsewski*, 508 F. App'x 99, 104 (3d Cir. 2013) (*per curiam*) (finding "an officer's review of, or failure to investigate, an inmate's grievances generally does not satisfy the requisite personal involvement" requirement); *Pressley v. Beard*, 266 F. App'x 216, 218 (3d Cir. 2008) (*per curiam*) ("The District Court properly dismissed these [supervisory] defendants and any additional defendants who were sued based on their failure to take corrective action when grievances or investigations were referred to them.").  Accordingly, the claims against these Defendants will be dismissed with prejudice.

### D.    Deliberate Indifference Claims Against Boykins and Rickson

Liz again alleges in the Amended Complaint that Boykins did not properly install the safety bar in the handicap shower and that both Boykins and Rickson did not properly maintain the handicap shower to prevent slippage.  In the April 4 Memorandum, the Court construed the allegations as Eighth Amendment claims based on the conditions of Liz's confinement and denied the claims because, at best, Liz alleged only that the Defendants acted negligently, and he did not allege conduct that rose to the level of deliberate indifference.  *See Liz*, 2022 WL 1017620, at *4.[9]  Despite being provided an opportunity to cure this defect, in the Amended

_____

[9] "To determine whether prison officials have violated the Eighth Amendment, we apply a two-prong test:  (1) the deprivation must be 'objectively, sufficiently serious; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities'; and (2) the prison official must have been 'deliberate[ly] indifferen[t] to inmate health or safety.'"  *Porter v. Pennsylvania Dep't of Corr.*, 974 F.3d 431, 441 (3d Cir. 2020) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).  Such necessities include food, clothing, shelter, medical care, and reasonable safety.  *Tillman v. Lebanon Cty. Corr. Facility*, 221 F.3d 410, 418 (3d Cir. 2000).  However, a claim based on negligence is insufficient to allege a claim under § 1983.  *See Farmer*, 511 U.S. at 835; *Daniels v. Williams*, 474 U.S. 327, 330-31 (1986); *Davis v.*

Complaint Liz does not offer any additional allegations to support plausible Eighth Amendment claims against Boykins and Rickson.  He alleges in conclusory fashion only that Rickson "did not [maintain] the drainage problem properly" which "caused [Liz] to slip and fall" and that this "create[d] an unreasonable risk of injury" in violation of the Eighth Amendment.  (Am. Compl. at 12.)  Liz alleges that Boykins "did not install the safety bar [on the] handicap shower wall properly," which constituted "deliberate indifference and a callous disregard for prisoner safety." (*Id*. at 13.)

Again, these allegations do not state plausible Eighth Amendment claims.  A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Farmer*, 511 U.S. at 837.  At best, Liz's allegations support a claim of negligence against Rickson and Boykins, which is insufficient to state a plausible Eighth Amendment violation.  *See Bacon v. Carroll*, 232 F. App'x 158, 160 (3d Cir. 2007) (finding allegations that an inmate slipped and fell on a wet floor amounted "merely to negligence" and therefore were "not actionable under § 1983"); *Hall-Wadley v. Maint. Dep't*, 386 F. Supp. 3d 512, 517 & n.27 (E.D. Pa. 2019) ("[M]any . . . courts, including the Third Circuit, have reasoned that slip-and-fall injuries stemming from slippery prison surfaces are more within the realm of ordinary negligence, and thus are not sufficient to state a claim for a deprivation of an Eighth Amendment right."); *Richie v. Jones*, No. 13-0054, 2014 WL 4058951, at *5 (M.D. Pa. Aug. 14, 2014) ("Plaintiff has failed to state an Eighth Amendment conditions of confinement claim for failing

---

*Superintendent Somerset SCI*, 597 F. App'x 42, 46 (3d Cir. 2015) ("Here, the allegations contained in the amended complaint, taken as true, assert a simple negligence claim at most, and thus do not state a claim of a constitutional violation under the Eighth Amendment.").

to adequately affix the shower floor with slip guards or rubber mats . . . [the allegation] indicates negligence at worst, but negligence does not rise to the level of a constitutional violation."). Accordingly, Liz's § 1983 claims against Boykins and Rickson will be dismissed.  Because Liz has already been given an opportunity to cure the defects in his § 1983 claims against Boykins and Rickson and has been unable to do so, any further amendment would be futile.  *See Jones v. Unknown D.O.C. Bus Driver & Transp. Crew*, 944 F.3d 478, 483 (3d Cir. 2019) (amendment by *pro se* litigant would be futile when litigant "already had two chances to tell his story").

### E.      Claims for Deliberate Indifference to Serious Medical Needs

Liz asserts Eighth Amendment claims for failure to provide medical care against three SCI Phoenix correctional officers – Curley, Kopcik, and Merrideth – and against various Wellpath medical professionals – Doctors Riley, Goldberg, Letizio, Bazel, DeSantis, and Kaminsky, and PAs Walsh and White.[10]  To state a constitutional claim based on the failure to provide medical treatment, a prisoner must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs.  *See Farmer*, 511 U.S. at 835; *Moore v. Luffey*, 767 F. App'x 335, 340 n.2 (3d Cir. 2019); *Parkell v. Morgan*, 682 F. App'x 155, 159-60 (3d Cir. 2017) (*per curiam*).  As noted, a prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety."  *Farmer*, 511 U.S. at 837.  "A medical need is serious, . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention."  *Monmouth Cty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotations omitted).  Deliberate indifference is properly

---

[10] The only allegations about Savage and Huner concern their involvement in denying Liz's grievances.  Accordingly, claims against these two Wellpath Defendants are addressed in the section about § 1983 claims involving grievances.  *See supra* § III.C.

alleged "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).  Allegations of medical malpractice and mere disagreement regarding proper medical treatment are insufficient to establish a constitutional violation.  *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004).

### 1.    Claims against Phoenix Correctional Officers Curley, Kopcik, and Merrideth

Liz alleges that Curley and Kopcik were deliberately indifferent to his medical needs, in violation of the Eighth Amendment.  Curley and Kopcik were the correctional officers on duty when Liz fell in the handicap shower the second time, on September 9, 2021.  (Am. Compl. at 35.)  Liz allegedly told Curley and Kopcik about his accident and how he was experiencing pain in his neck, left arm, shoulder, and knee.  (*Id*.)  When Liz requested to see a medical professional, Curley and Kopcik allegedly responded that he would have to wait until the next correctional officer assumed duty, and then they sent him back to his cell.  (*Id*.)  Liz alleges that Merrideth also violated his Eighth Amendment rights.  On May 19, 2021, Liz went to the medical department for pain he was having in his lower back, left knee, left arm, shoulder, and neck.  (*Id*. at 36.)  Liz states that after he "expressed" to Merrideth that he had been waiting for over an hour to see a doctor, Merrideth was "real nasty" to Liz and sent him back to his housing unit still in pain and without the ability to see the doctor.  (*Id*.)

As stated, delays in necessary medical treatment based on a non-medical reason can constitute deliberate indifference.  *Rouse*, 182 F.3d at 197.  A serious medical need exists where "failure to treat can be expected to lead to substantial and unnecessary suffering."  *Colburn v. Upper Darby Twp*., 946 F.2d 1017, 1023 (3d Cir. 1991).  Liz has stated plausible Eighth

Amendment claims against Curley, Kopcik, and Merrideth based on his assertions that these Defendants delayed medical treatment for what is alleged to be non-medical reasons.  These claims pass statutory screening and will be served for a responsive pleading.

### 2.    Claims against Doctors Goldberg and DeSantis

After Liz's first incident in the handicap shower on February 24, 2021, he was evaluated by Dr. Goldberg, who gave Liz an injection for the pain in his arm and took pictures of his knee, neck, shoulder, and arm.  (Am. Compl. at 36.)  Liz had x-rays taken, was given ice, and was sent back to his cell block.  (*Id*.)  Liz alleges in conclusory fashion that Dr. Goldberg "knew about [his] medical needs and did nothing to ensure that [his] medical needs were met," which constituted an Eighth Amendment violation.  (*Id*. at 25.)  Liz continued to experience pain and was evaluated by Dr. DeSantis on March 3, 2021.  (*Id*. at 36.)  Liz explained to Dr. DeSantis that he was having pain in his left knee, lower back, left arm, and shoulder, as a result of the fall in the handicap shower.  (*Id*.)  Liz alleges that Dr. DeSantis responded to Liz that he was "just sore" from the fall in the shower.  (*Id.*)  Liz alleges in conclusory fashion that Dr. DeSantis "knew about [his] medical needs and did nothing to ensure that [his] medical needs were met," which constituted an Eighth Amendment violation.  (*Id*. at 25.)

The allegations about Doctors Goldberg and DeSantis do not rise to the level of plausible Eighth Amendment claims.  Although it is not entirely clear, Liz appears to allege that his medical care should have been handled differently by these doctors.  However, a difference of opinion as to the proper medical care does not constitute deliberate indifference.  *See Lenhart v. Pennsylvania*, 528 F. App'x 111, 115 (3d Cir. 2013) (*per curiam*) (stating that allegations of negligent diagnosing and treatment, and mere disagreement as to proper medical treatment do not raise a constitutional claim); *Smith v. O'Boyle*, 251 F. App'x 87, 90 (3d Cir. 2007) (affirming

dismissal of a complaint, "[b]ecause a disagreement as to the proper medical treatment for a prisoner is insufficient to establish an Eighth Amendment violation").  When prisoners receive some medical treatment and a dispute arises "over the adequacy of treatment," district courts should not "second guess medical judgments and . . . constitutionalize claims which sound in state tort law." *U. S. ex rel. Walker v. Fayette Cty., Pa*., 599 F.2d 573, 575 n.2 (3d Cir. 1979) (citation omitted).  Liz concedes that he was evaluated by the doctors, received x-rays, pain medication and ice.  The question of whether "additional diagnostic techniques or forms of treatment . . . [are necessary] is a classic example of a matter for medical judgment . . . and does not represent cruel and unusual punishment" under the Eighth Amendment.  *McCluskey v. Vincent*, 505 F. App'x 199, 203 (3d Cir. 2012) (internal quotation marks omitted).  Accordingly, Liz's claims against Dr. Goldberg and Dr. DeSantis will be dismissed without prejudice.

### 3.    Claims against Doctors Riley and Bazel; and PAs White and Walsh

Liz alleges that during separate medical evaluations by Doctors Riley and Bazel, and PAs White and Walsh, he was denied diagnostic testing, such as x-rays or MRIs for alleged pain in his neck, shoulder, back, and arm.  (Am. Compl. at 37-39.)  Liz alleges that was evaluated by Dr. Riley for knee pain on July 21, 2021, and that Dr. Riley denied Liz's request for an MRI.  (*Id*. at 37.)  Liz also alleges that he requested an MRI again from Dr. Riley at a visit on August 11, 2021, and that Dr. Riley responded, "I don't think you need an MRI on your knee." (*Id*.)  Liz alleges that PA White evaluated him following the second incident in the handicap shower on September 9, 2021, after which Liz complained of pain in his neck, arm, shoulder, and knee.  (*Id*. at 38.)  PA White gave Liz an injection in his arm for the pain and ice for his neck and shoulder but denied his request for MRIs and x-rays.  (*Id*.)  When evaluated by PA Walsh on September 17, 2021, PA Walsh allegedly told Liz that he has "inflammation in the tendon that goes into

[his] shoulder and rotator cuff," prescribed him prednisone, and denied his request for an MRI.
(*Id*.)  Liz alleges that he was evaluated by Dr. Bazel on April 13, 2022, who also denied his
request for an MRI.  (*Id*. at 39.)  Liz also saw Dr. Bazel on September 1, 2021 for a lump on the
side of his head.  (*Id*. at 38.)  During the visit, Dr. Bazel was allegedly "very nasty and sarcastic"
and "treated [Liz] horribly."  (*Id*.)

Liz alleges that each of these Wellpath employees "knew about [his] immediate medical
needs and did nothing to ensure that [his] medical needs were met," which constituted a "denial
of medical treatment in violation of the 8th amendment."  (*Id*. at 24, 27-29.)  Liz has failed to
state plausible Eighth Amendment claims against these Defendants.  As explained, mere
disagreement regarding proper medical treatment is insufficient to establish a constitutional
violation.  *See Spruill*, 372 F.3d at 235.  Liz was evaluated numerous times by many different
medical professionals.  Because he was receiving medical treatment for his injuries and pain, the
Court should not "second guess medical judgments."  *Fayette Cty*., 599 F.2d at 575 n.2.  At best,
these Wellpath employees' conduct may have constituted negligence, which is not enough to
allege a constitutional claim.  *Rouse*, 182 F.3d at 197 ("It is well-settled that claims of negligence
or medical malpractice, without some more culpable state of mind, do not constitute 'deliberate
indifference.'").  To the extent that Liz alleges that these Defendants should have given him x-
rays or MRIs, such allegations do not rise to the level of deliberate indifference for purposes of
the Eighth Amendment.  *See Dykeman v. Ahsan*, 560 F. App'x 129, 131 (3d Cir. 2014)
(concluding that prison medical defendants' refusal to order an MRI "constitutes a disagreement
with the type of care [the prisoner] was provided, and does not support a claim of an Eighth
Amendment violation").  Finally, Liz's allegations that Dr. Bazel was "nasty" to him does not
state a plausible Eighth Amendment claim.  *See Positano v. Wetzel*, 529 F. App'x 116, 119-20

(3d Cir. 2013) (concluding that allegations that a nurse was "rude" to plaintiff and failed to immediately treat him did not amount to deliberate indifference).  Accordingly, Liz's § 1983 claims against Dr. Riley, PA White, PA Walsh, and Dr. Bazel will be dismissed without prejudice.

### 4.      Dr. Kaminsky

Liz also asserts an Eighth Amendment claim against Dr. Kaminsky, who allegedly visited Liz in his cell in August 2021.  (Am. Compl. at 37.)  Liz explained to Dr. Kaminsky that he was still having pain in his left knee and low back, where a stimulation implant device is located. (*Id*.)  Dr. Kaminsky told Liz that he would arrange for Liz to visit his outside neurosurgeon, assign him a wheelchair, and order him knee brace.  (*Id*.)  Liz alleges that he never received the knee brace.  (*Id*.)  It is unclear to the Court how these allegations support an Eighth Amendment violation.  Dr. Kaminsky facilitated requested medical treatment for Liz.  The fact that Liz never received the ordered knee brace, at best, asserts only negligent conduct and does not rise to the level of deliberate indifference.  Accordingly, Liz's § 1983 claims against Dr. Kaminsky are dismissed without prejudice.

### 4.      Dr. Letizio

Liz also asserts Eighth Amendment claims against Dr. Letizio.  He alleges that on March 25, 2022, while getting x-rays on his left arm and shoulder, he was approached by Dr. Letizio "in an aggressive manor."  (Am. Compl. at 39.)  Liz alleges that Dr. Letizio "verbally abused" and "mistreated" him.  (*Id*.)  Liz does not allege that Dr. Letizio refused, delayed, or denied medical care.  There are no allegations that Dr. Letizio even treated Liz.  In addition, rude comments do not rise to the level of deliberate indifference.  *See Positano*, 529 F. App'x at 119-20. Accordingly, the § 1983 claims against Dr. Letizio will be dismissed without prejudice.

### F.        Negligence and Malpractice Claims

Liz purports to allege state law claims for negligence and malpractice.  To state a claim

of negligence under Pennsylvania law, a plaintiff must allege: "(1) a duty or obligation

recognized by law, requiring the actor to conform to a certain standard of conduct; (2) a failure to

conform to the standard required; (3) a causal connection between the conduct and the resulting

injury; and (4) actual loss or damage resulting to the interests of another." *Vasquez v. Wingard*,

847 F. App'x 108, 111 (3d Cir. 2021) (quoting *Kleinknecht v. Gettysburg Coll.*, 989 F.2d 1360,

1366 (3d Cir. 1993).  To state a claim for medical malpractice under Pennsylvania law, a

plaintiff must allege: (1) the medical professional owed a duty to the patient; (2) the medical

professional breached the duty; (3) the breach was the proximate cause of the harm suffered; and

(4) the damages suffered were a direct result of the harm.  *Brown v. Hahnemann Univ. Hosp.*, 20

F. Supp. 3d 538, 542 (E.D. Pa. 2014) (citing *Hightower-Warren v. Silk*, 548 Pa. 459, 698 A.2d

52, 54 (1997).[11]

---

[11] To the extent that Liz wishes to pursue medical malpractice claims against any of the
defendants, he should know that the Pennsylvania Rules of Civil Procedure require him to file a
"certificate of merit" with respect to each defendant against which he asserts professional
malpractice claim.  Rule 1042.3 of the Pennsylvania Rules of Civil Procedure requires an
"attorney for the plaintiff, or the plaintiff if not represented" who brings an action based on "an
allegation that a licensed professional deviated from an acceptable professional standard" to file
a certificate of merit within sixty days of the filing of the complaint.  The certificate include one
of the following statements: (1) that "an appropriate licensed professional" has supplied a written
statement that there is a reasonable probability that the defendant's conduct fell outside
acceptable professional standards; (2) that the claim against the defendant is based solely on
allegations against other professionals for whom the defendant is responsible; or (3) that expert
testimony is unnecessary for prosecution of the claim.  Pa. R. Civ. P. 1042.3(a).  The rule allows
for a sixty-day extension of the period for filing a certificate of merit if such a request is made
before the expiration of the deadline and good cause is shown.  *See* Pa. R. Civ. P. 1042.3(d).
Therefore, if Liz pursues malpractice claims in a second amended complaint, he must file
certificates of merit within 60 days of filing the second amended complaint or seek an extension
within that 60-day timeframe.

The bulk of Liz's 75-page Amended Complaint centers on his Eighth Amendment claims against the 22 named DOC prison officials and Wellpath medical professionals.  Only once in the Amended Complaint does Liz state that he "also alleges the torts of malpractice and negligence."  (Am. Compl. at 10.)  Liz does not state which of the Defendants against which he seeks to assert negligence or malpractice claims, nor does he allege facts to support the necessary elements for plausible negligence or malpractice claims.  To the extent Liz intended to pursue negligence and malpractice claims against any of the Defendants, those claims are dismissed because they are undeveloped.  However, because the Court cannot say at this time that Liz can never state plausible negligence and malpractice claims, Liz will be permitted to file a second amended complaint.  The second amended complaint, if he wishes to file one, must specifically identify the defendant or defendants against which he seeks to pursue these state law claims.  It must also allege facts to support the elements of the claims.

## IV.   CONCLUSION

For the foregoing reasons, the Court will dismiss his Amended Complaint in part with prejudice and in part without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim.  The following claims will be dismissed with prejudice:  (1) the § 1983 claims against the DOC; (2) the official capacity claims against the SCI Phoenix prison officials (Varner, Boykins, Moore, Owens, Rickson, Sober, Orlando, Curley, Kopcik, and Merrideth); (3) the official capacity claims against the individual Wellpath employees (Doctors Riley, Goldberg, Letizio, Bazel, DeSantis, Kaminsky, PAs Walsh and White; supervisor Huner and Nurse Savage); (4) the individual capacity § 1983 claims against Sorber, Varner, Moore, Owens, Orlando, Savage, and Huner based on their handling of his prison grievances; and (5) the individual capacity § 1983 claims against Boykins and Rickson.  The following claims will be

20

dismissed without prejudice:  (1) the § 1983 claims against Wellpath Healthcare; (2) the individual capacity § 1983 claims Doctors Riley, Goldberg, Letizio, Bazel, DeSantis, and Kaminsky, and PAs Walsh and White; and (3) all claims for negligence and malpractice.  Liz's § 1983 claims for deliberate indifference against Curley, Kopcik, and Merrideth pass statutory screening and will be served for a responsive pleadings.  Because the Court cannot say at this time that Liz cannot cure the defects in the claims that have been dismissed without prejudice, he will be granted the option of filing a second amended complaint to attempt to cure the defects in those claims or advise the Court that he seeks to proceed only on the claims that pass statutory screening.

An appropriate Order follows, which provides further instruction as to amendment.


BY THE COURT:

    /s/ John Milton Younge
JOHN MILTON YOUNGE, J.