## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RAMON M. LIZ,** | : | |
| **Plaintiff,** | : | **No. 22-cv-0396-JMY** |
| | : | |
| **v.** | : | |
| | : | |
| **PENNSYLVANIA DEPARTMENT OF** | : | |
| **CORRECTIONS, *et al.*,** | : | |
| **Defendants.** | : | |

### MEMORANDUM

**YOUNGE, J.**                                                                                    **November 18, 2024**

*Pro se* Plaintiff Ramon M. Liz, an inmate at SCI Phoenix, has filed a Second Amended

Complaint asserting claims under 42 U.S.C. § 1983.  Specifically, Plaintiff asserts Eighth

Amendment claims related to injuries he sustained using the prison showers and the subsequent

denial of medical care by prison officials and prison-contracted medical professionals. The Court

granted Plaintiff leave to proceed *in forma pauperis*, screened his initial Complaint, and

dismissed the Complaint without prejudice.  (Order & Memorandum, ECF No. 6, 7.)  Plaintiff

then filed an Amended Complaint, which was also screened and dismissed in part pursuant to 28

U.S.C. § 1915(e)(2)(B) – namely, the Court found that Section 1983 claims against Defendants

Kopcik, Curley, and Merrideth in their individual capacities were the only claims Plaintiff

brought that were sufficiently pled to move forward.  (Order & Memorandum, ECF No. 16, 17.)

Plaintiff was granted leave to file a Second Amended Complaint which he filed in

December 2022.  (Second Am. Compl., ECF 28.)  Plaintiff's Second Amended Complaint refines

several previously brought claims that were dismissed without prejudice.  Because this Court has

previously allowed a period of time of several months for the Plaintiff to provide necessary

components to support his claims, and since the Plaintiff has also put the Court on notice that he

is attempting to find an attorney (Motion, ECF No. 71; Plaintiff's Request, ECF No. 68.), the Court will grant in part and deny in part Defendants' Motions to Dismiss.  (Motions to Dismiss, ECF Nos. 45, 47.)

## I.    FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY:

Plaintiff alleges that the injuries giving rise to his claims occurred on two separate occasions using the same handicap shower on "HB-Block." (Compl. 2-4. ECF No. 2.)[1]  The first incident occurred on February 24, 2021, when Plaintiff "slipped and fell out of the shower" because prison staff "did not keep up the maintenance of the drainage problem" of the shower. *See Liz v. Pennsylvania Dep't of Corr.*, No. 22-cv-396, 2022 WL 1017620, at 1 (E.D. Pa April 4, 2022).  Plaintiff was taken to the medical department in a wheelchair and evaluated by Dr. Goldberg, who took X-rays and pictures of Plaintiff's neck, left arm, shoulder, and swollen knee. *Liz v. Pennsylvania Dep't of Corr.*, No. 22-cv-396, 2022 WL 4120264, at 2 (E.D. Pa Sept. 9, 2022).  The second shower incident occurred on September 9, 2021 in the same handicap shower stall.  *Id.*  When Plaintiff was "sitting on the metal handicap shower seat that folds out," he grabbed the safety bar on the shower wall, and "it came off the wall," swinging Plaintiff out of the shower and causing him to slip and injure his knees, left arm, and shoulder.  *Id.*  Plaintiff states that he "crawled to [his] wheelchair in pain."  He told the two correctional officers on that shift — Mr. Kopcik and Mr. Curley — what had happened and that he was experiencing pain in his neck, left arm, shoulder, and knee.  *Id.*  Kopcik and Curley told Plaintiff that he would have to "wait until the next officer came on duty" before transport to the prison medical department, and they sent Plaintiff back to his cell.  *Id.*  Plaintiff alleges that he laid down in his cell "in pain for an hour" until the correctional officer on the next shift sent him to the medical department for

---

[1] The Court adopts the pagination supplied by the CM/ECF docketing system.

treatment. *Id.* While there, Plaintiff was evaluated by Defendant Physician Assistant Kim White, who gave Plaintiff a "shot . . . for the pain" and sent him back to his cell with a bag of ice. *Id.* Plaintiff did not receive an X-ray or magnetic resonance imaging (MRI). *Id.*

From the first incident in the handicap shower in February 2021 through May 2022, Plaintiff was seen by multiple medical professionals employed by Wellpath for pain in his back, neck, arm, and shoulder. *Id.* Plaintiff alleges that some of the Wellpath employees denied his repeated requests for an MRI or other diagnostic tests. *Id.* He alleges that some Wellpath employees were unprofessional and did not treat him with respect. *Id.* He asserts Eighth Amendment claims against the Wellpath employees based on their treatment of him and/or their alleged lack of adequate medical care. *Id.*

Plaintiff's initial Complaint named the following Defendants: D. Varner; Keri Moore; K. Owens; Mike Boykins; Mr. Rickson; Jamie Sorber, and the Pennsylvania Department of Corrections ("DOC"). *Liz*, WL 1017620, at 3. Plaintiff asserted § 1983 claims against these Defendants in both their official and individual capacities, as well as the DOC as a vicariously liable employer.[2] *Id.* at 2. Because of this alleged denial of medical care, Plaintiff asserted Eighth Amendment deliberate indifference claims against the Defendants. *Id*. at 3.

In the first Order and Memorandum addressing the original Complaint, the Court granted Plaintiff the ability to proceed with his claims *in forma pauperis*. *Id*. at 1. Upon screening, the Court dismissed Plaintiff's Complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B). *Id*. A majority of Plaintiff's allegations were dismissed without prejudice, granting him the opportunity to revise and refile his complaint. *Id*. Plaintiff filed an Amended

---

[2] The § 1983 claims against the DOC were dismissed first without prejudice in the April 2022 order, and subsequently dismissed with prejudice in the September 2022 order for the previously stated reasons.

Complaint on June 24, 2022. (Am. Compl., ECF No. 14.) In this Amended Complaint, Plaintiff named all the same Defendants who were named in the original Complaint, and he asserted claims that were identical to claims that were previously asserted. *Liz*, WL 4120264, at 2. In addition, Plaintiff named the following additional Defendants: Orlando, Curley, Kopcik, Merrideth, Riley, Goldberg, Letizio, Walsh, White, Bazel, DeSantis, Kaminsky, Huner, Savage, and Wellpath, LLC. *Id.* Against these Defendants, Plaintiff claims deliberate indifference under the Eighth Amendment for denial of adequate medical care. *Id.*

In its September 9, 2022, Order and Memorandum, the Court dismissed in part Plaintiff's Amended Complaint upon screening for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B). *Id.* at 9. Plaintiff's claims against the DOC were dismissed with prejudice since the DOC is entitled to Eleventh Amendment Immunity, which was outlined in the April 4 Memorandum. *Liz*, 2022 WL 1017620, at 3. All official capacity Section 1983 claims against prison staff were also dismissed with prejudice, since the Eleventh Amendment provides immunity for prison officials as well. *Id.* In sum, all Eighth Amendment deliberate indifference claims were dismissed with the exception of the claims brought against Defendants Curley, Kopcik, and Merrideth in their individual capacity because the alleged denial of medical treatment for a non-medical reason can constitute deliberate indifference. *Liz*, 2022 WL 4120264, at 6. Plaintiff alleges that Curley and Kopcik's requirement that he wait until the next shift to receive medical care, and Merrideth sending him back to his cell without medical treatment after informing him that he had waited over an hour for a doctor, rises to the level of a plausible deliberate indifference claim for denial of medical care for a non-medical reason. *Id.*

Additionally, the Court concluded that Plaintiff failed to allege plausible Eighth Amendment claims against Boykins and Rickson, who are responsible for maintaining the prison

showers in which Plaintiff fell and injured himself. *Id.* at 5-6. Plaintiff's allegations showed at most, negligence on the part of these Defendants, though not deliberate indifference. *Id.* Claims against Defendant Sorber were also dismissed because Plaintiff failed to allege that Sorber was personally involved in the denial of his medical care other than through the denial of Plaintiff's grievance requests, which is insufficient to establish personal involvement. *Id.* Further, the Court concluded that to the extent Plaintiff asserted claims under Title II of the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act ("RA") based on the conditions of the handicap shower, those claims were not plausible because Plaintiff did not allege that he was disabled or was otherwise subject to discrimination on account of a disability. *Id.*[3] Finally, to the extent Plaintiff asserted any negligence claims, they were dismissed without prejudice because he failed to allege facts showing that the Court had diversity jurisdiction over these state law claims. *Id.*

The Court provided detailed reasoning for dismissal of claims with regard to each Defendant when it entered its April 4 and September 9, 2022 Memorandums, respectively as referenced herein. *Liz*, 2022 WL 1017620; *Liz*, 2022 WL 4120264. Following a full review of Plaintiff's Amended Complaint, the Court gave Plaintiff the opportunity to file a Second Amended Complaint to cure the defects in claims that were dismissed without prejudice. *Liz*, 2022 WL 4120264. In dismissing the Amended Complaint, the Court pointed out that Plaintiff may have grounds for potential malpractice or negligence claims, but these claims are not sufficiently pled and therefore dismissed with leave to amend. *Id.* at 3.

---

[3] Plaintiff did not assert any ADA or RA claims in his Amended Complaints.

After two extensions of time, Plaintiff filed a Second Amended Complaint. *Id.* at 2.[4]  In this Second Amended Complaint, Plaintiff brings individual capacity deliberate indifference Section 1983 claims against Defendant Correctional Officers Kopcik, Merrideth, and Riley. State law negligence claims are also asserted against Defendants Curley, Kopcik, and Merrideth. (Second Am. Compl. ¶¶ 22-23, ECF No. 28.)  In addition, Plaintiff also asserts Section 1983 and professional negligence (medical malpractice) claims against Wellpath, LLC, Dr. Bazel, Dr. Goldberg, Dr. DeSantis, Dr. Riley, Dr. Letizio and Physician Assistants White, Walsh, and Kaminsky in their individual capacity.  *Id.* at 11.

Defendants Wellpath, LLC, Dr. Bazel, Dr. Goldberg, Dr. DeSantis, Dr. Riley, Dr. Letizio and Physician Assistants Walsh, and Kaminsky filed a motion to dismiss.[5]  (Motion to Dismiss, ECF No. 45.)  Defendant Correctional Officers Curley, Kopcik, Merrideth, and Physician Assistant White also filed a motion to dismiss.  (Motion to Dismiss, ECF No. 57).  In both motions to dismiss, Defendants rely heavily on the logic and legal reasoning set forth in the two previously memorandum written and filed by the Court when dispensing with claims asserted by Plaintiff in original Complaint and Amended Complaint.  In both motions to dismiss, Defendants seek dismissal based on Federal Rule of Civil Procedure 12(b)(6).  Defendant Correctional Officers Curley, Kopcik, Merrideth, and Physician Assistant White raise additional grounds for dismissal based on Federal Rule of Civil Procedure 12(b)(1).

---

[4] Plaintiff attached Exhibits I through Exhibit P to his Second Amended Complaint, which comprise of grievance requests and responses related to his medical care and the conditions of the handicap shower.  (Second Am. Compl. at 60-73.)  Plaintiff also requested that the Court consider exhibits A through H, which he attached to his initial Complaint.

[5] Defendants Riley, Goldberg, Letizio, Walsh, Bazel, Desantis, and Kaminsky are employed by Wellpath and not the DOC. Official capacity claims against them have been previously dismissed.

## II.    LEGAL STANDARD:

The standard for a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is examined in detail in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  After *Iqbal*, it is clear that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to defeat a Rule 12(b)(6) motion to dismiss.  *Id.* at 678; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "To survive dismissal, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim [for] relief that is plausible on its face.'"  *Tatis v. Allied Interstate*, LLC, 882 F.3d 422, 426 (3d Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678).

Facial plausibility is "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Iqbal*, 556 U.S. at 678).  Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Iqbal*, 556 U.S. at 678).  Thus, this Court must examine Plaintiff's claims to determine whether it can infer that the Defendant is liable for the alleged misconduct.

When the district court decides to dismiss a complaint based on Plaintiff's failure to plead a *prima facia* case, the court must also decide whether to grant leave to file an amended complaint.  See *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002); *Shane v. Fauver*, 213 F.3d 113, 116-17 (3d Cir. 2000).  Specifically, the Third Circuit Court of Appeals has admonished that when a complaint is subject to dismissal for failure to state a claim, courts should liberally grant leave to amend "unless such an amendment would be inequitable or futile." *Phillips*, 515 F.3d at 245 (citing *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004)).

A court need not grant leave to amend when it would be an exercise in futility. *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 879 (3d Cir. 2018) ("Leave to amend is properly denied if amendment would be futile, i.e., if the proposed complaint could not 'withstand a renewed motion to dismiss.'") (quoting *Jablonski v. Pan. Am. World Airways, Inc.*, 863 F.2d 289, 292 (3d Cir. 1988)); see also *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997) (recognizing that denial of leave to amend is not an abuse of discretion where the pleadings before the court demonstrate that further amendment would be futile).

## III.    DISCUSSION:

Plaintiff asserts Eighth Amendment claims for deliberate indifference to his safety and medical needs pursuant to 42 U.S.C. § 1983, the "vehicle by which federal constitutional claims may be brought in federal court." *Liz*, WL 4120264, at 3. "To state a claim under [Section] 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States and must show that the alleged deprivation was committed by a person acting under color of state law." *Id.* In a Section 1983 action, the personal involvement of each defendant in the alleged constitutional violation is a required element, and therefore, Plaintiff must allege how each defendant was involved in the events and occurrences giving rise to the claims. *Id.*

Plaintiff also asserts claims based on legal theories of ordinary negligence, professional negligence (medical malpractice), corporate negligence and vicarious liability against the moving Defendants. Claims asserted against each Defendant will be explored in more detail below.

**A.      Defendants Wellpath, LLC, and the Medical Providers Who Worked for Wellpath:**

Plaintiff alleges deliberate indifference under Section 1983, professional negligence (medical malpractice), and negligence against Wellpath, LLC, and its named staff doctors, and physician's assistants.  *Id.* at 4.  These claims were dismissed without prejudice in the Court's September Order and Memorandum.  *Id.* at 9.  Plaintiff now reasserts these claims in the Second Amended Complaint.

**A.1.    Claims Asserted against Wellpath under Section 42 U.S.C. § 1983:**

Wellpath, LLC, a private corporation under contract to provide prison health services, may be held liable under Section 1983 only in specific instances.  *Id.* at 4.  There are two avenues by which Plaintiff can claim Section 1983 violations against an entity like Wellpath.  First, a plaintiff can prove a Section 1983 violation when an entity's policies or customs caused an alleged constitutional violation.  *Id.*  Otherwise, Plaintiff must allege a failure by the entity to supervise, train, or discipline its employees and that the failure amounted to deliberate indifference.  *Id.*  The Court previously discussed both of these avenues in the Memorandum that it filed on September 9, 2022.

The Court previously found that Plaintiff failed to place Defendant Wellpath's policies and customs at issue by identifying deficient policies or customs in the Amended Complaint.  *Id.*  The Court also found that Plaintiff failed to aver facts to establish a failure to train or supervise employees or agents.  *Id.*  The Court cautioned Plaintiff that there is only the "narrowest of circumstances" where failure to train or supervise can be characterized as deliberate indifference.  *Id.*  Therefore, any attempt by Plaintiff to pursue this avenue would likely be unsuccessful.  The Court previously dismissed official capacity claims against Wellpath employees with prejudice, and dismissed all other Section 1983 claims against Wellpath without prejudice, allowing

Plaintiff to assert one of the two above discussed avenues to bring his Section 1983 claim.  *Id.* at 9.

The Court will once against dismiss Section 1983 claims against Wellpath because Plaintiff failed to plead facts to establish liability.  Plaintiff did not identify a deficient policy or custom that led to the purported failure to provide medical care.  Likewise, Plaintiff did not identify a failure to train and/or supervise.  Therefore, the Court will dismiss Section 1983 claims against Wellpath, LLC.

When the district court decides to dismiss a complaint based on Plaintiff's failure to plead a *prima facia* case, the court must also decide whether to grant leave to file an amended complaint.  See *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002); *Shane v. Fauver*, 213 F.3d 113, 116-17 (3d Cir. 2000).  A court need not grant leave to amend when it would be an exercise in futility.  *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 879, 69 V.I. 1034 (3d Cir. 2018) ("Leave to amend is properly denied if amendment would be futile, i.e., if the proposed complaint could not 'withstand a renewed motion to dismiss.'") (quoting *Jablonski v. Pan. Am. World Airways, Inc.*, 863 F.2d 289, 292 (3d Cir. 1988)); see also *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997) (recognizing that denial of leave to amend is not an abuse of discretion where the pleadings before the court demonstrate that further amendment would be futile).

Plaintiff has now exhausted his third opportunity to refine his pleadings to establish claims against Wellpath, LLC, based on what he purports were violations of Section 1983.  Plaintiff has failed to establish a right to proceed; therefore, leave to file a third amended complaint asserting Section 1983 claims against Wellpath will not be granted.  *Jones v. Unknown D.O.C. Bus Driver & Transp. Crew*, 944 F.3d 478, 483 (3d Cir. 2019) (where inmate plaintiff

"has already had two chances to tell his story . . . giving him further leave to amend would be futile.").

**A.2.    Claims Asserted Against Individual Wellpath Medical Providers on a Theory of Deliberate Indifference under 42 U.S.C. § 1983:**

In his Second Amended Complaint, Plaintiff names Defendants in their individual capacity who worked for Defendant Wellpath, LLC – the prison medical provider.  (Second Amd. Compl., ECF No. 28.)  Specifically, Plaintiff names Dr. Bazel, Dr. Goldberg, Dr. DeSantis, Dr. Riley, Physician Assistant Kaminsky and Physician Assistant Walsh as Defendants.  (*Id.*)  The Court previously dismissed with prejudice claims asserted against these Defendants in their official capacities when this Court entered its Order and Memorandum on September 9, 2023.  *Liz*, WL 4120264, at 3.  At this point, Plaintiff can proceed with his Section 1983 claims against these medical providers in their individual capacities only.

Plaintiff asserts Section 1983 claims against Defendants doctors and physician assistants for deliberate indifference to his known medical needs based on what he alleges was their failure to provide appropriate medical care.  (Second Am. Compl., *Liz*, WL 4120264, at 7-8.)  Specifically, Plaintiff avers that he, "hasn't been evaluated by an orthopedic specialist nor received an MRI on his knees, left shoulder, and arm injuries he sustained from that fall."  (Second Am. Compl. ¶58.)  Plaintiff fails to plausibly plead a Section 1983 claim against these Defendants under the Eighth Amendment because a "mere disagreement regarding proper medical treatment is insufficient to establish a constitutional violation."  *Liz*, WL 4120264, at 6.  Plaintiff has also failed to plead facts to establish "culpable state of mind" which would be

required for allegations of medical malpractice to rise to the level of deliberate indifference.  *Id.* at 8.[6]

The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care for serous medical needs.  *Estelle v. Gamble*, 429 U.S. 97, 103-104 (1976).  In order to set forth a cognizable claim for a violation of his right to adequate medical care, an inmate must allege: (1) a serious medical need; and (2) behavior on the part of prison officials that constitutes deliberate indifference to that need.  *Id.* at 106.  The Third Circuit has defined serious medical needs as: (1) "one that has been diagnosed by a physician as requiring treatment"; (2) "one that is so obvious that a lay person would recognize the necessity for a doctor's attention"; or (3) one for which "the denial of treatment would result in the unnecessary and wanton infliction of pain" or "a life-long handicap or permanent loss."  *Atkinson v. Taylor*, 316 F.3d 257, 272-73 (3d Cir. 2003).

To state a constitutional claim based on the failure to provide medical treatment, a prisoner must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs.  *See Farmer*, 511 U.S. at 835; *Moore v. Luffey*, 767 F. App'x 335, 340 n.2

---

[6] "To determine whether prison officials have violated the Eighth Amendment, we apply a two-prong test: (1) the deprivation must be 'objectively, sufficiently serious; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities'; and (2) the prison official must have been 'deliberate[ly] indifferen[t] to inmate health or safety.'" *Porter v. Pennsylvania Dep't of Corr.*, 974 F.3d 431, 441 (3d Cir. 2020) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). Such necessities include food, clothing, shelter, medical care, and reasonable safety.  *Tillman v. Lebanon Cty. Corr. Facility*, 221 F.3d 410, 418 (3d Cir. 2000).  However, a claim based on negligence is insufficient to allege a claim under § 1983. *See Farmer*, 511 U.S. at 835; *Daniels v. Williams*, 474 U.S. 327, 330-31 (1986); *Davis v. Superintendent Somerset SCI*, 597 F. App'x 42, 46 (3d Cir. 2015) ("Here, the allegations contained in the amended complaint, taken as true, assert a simple negligence claim at most, and thus do not state a claim of a constitutional violation under the Eighth Amendment.").

(3d Cir. 2019); *Parkell v. Morgan*, 682 F. App'x 155, 159-60 (3d Cir. 2017) (*per curiam*).  As

noted, a prison official is not deliberately indifferent "unless the official knows of and disregards

an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837.  "A medical need is

serious, . . . if it is one that has been diagnosed by a physician as requiring treatment or one that

is so obvious that a lay person would easily recognize the necessity for a doctor's attention."

*Monmouth Cty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987).

Deliberate indifference is properly alleged "where the prison official (1) knows of a prisoner's

need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical

treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or

recommended medical treatment."  *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).

Allegations of medical malpractice and mere disagreement regarding proper medical

treatment are insufficient to establish a constitutional violation.  *See Spruill v. Gillis*, 372 F.3d

218, 235 (3d Cir. 2004).  The Courts have uniformly held, when considering a difference of

opinion as to treatment, that this type of conduct constitutes, at best, negligence but not the

deliberate indifference required by Section 1983.  *Snipes v. De Tella*, 95 F.3d 586, 591 (7th Cir.

1996) (disagreement in treatment alone will not support a constitutional violation); *Sanchez v.*

*Vild*, 891 F.2d 240, 242 (9th Cir. 1989) (a difference of opinion between an inmate and a

physician or between physicians does not give rise to an Eighth Amendment violation).

Negligence fails to rise to the level of deliberate indifference necessary to support an Eighth

Amendment action under Section 1983.  *Id.*

In the Second Amended Complaint, Plaintiff asserts various factual allegations in support

of his theory that Defendants failed to provide appropriate medical care.  For example, he argues

that magnetic resonance imaging (MRI) should have been performed on his knees, lower back,

left shoulder, and arm after falling in the shower.  (Second Am. Compl. ¶¶27, 30, 37, 52, 61, 63, Request for Relief ¶11.)  He further cites to the fact that Defendants denied his request for a referral to an orthopedic specialist for injuries he purportedly sustained to his knees and left shoulder.  (*Id.* ¶¶27, 30, 37, 52, 58, 59, 63. Request for Relief ¶11.)  Plaintiff complains that he, "hasn't been evaluated by an orthopedic specialist nor received an MRI on his knees, left shoulder, and arm injuries he sustained from that fall."  (Second Am. Compl. ¶50.)

Factual allegations related to Plaintiff's post-fall treatment are insufficient to establish a claim under Section 1983 against Defendants Dr. Bazel, Dr. Goldberg, Dr. DeSantis, Dr. Riley, PA Kaminsky and PA Walsh.  (*Id.*)  The facts asserted by Plaintiff in the Second Amended Complaint merely establish Plaintiff's opinion as to the proper course of treatment following his fall.  (See Generally Second Am. Compl.)  As will be discussed in more detail below, Plaintiff has completely failed to provide any statement or report from a medical expert to establish that the course of treatment provided by Defendants was inappropriate or improper.  Plaintiff comes forward with no evidence to establish that he should have received a series of MRIs and a referral to an orthopedic specialist immediate after he fell or in the months following his fall.

By Plaintiff's own account, Dr. Bazel, Dr. Goldberg, Dr. DeSantis, Dr. Riley, PA Kaminsky and PA Walsh provided medical care when Plaintiff visited the prison medical unit run by Defendant, Wellpath, LLC.  (Second Am. Compl.)  A plain reading of the Second Amended Complaint and that factual contentions therein establish a course of treatment as follows:

- Plaintiff first fell in shower on February 24, 2021, immediately thereafter he was taken to the prison medical department where his injuries were examined and photographed by Dr. Goldberg.  (Second Am. Compl. ¶51.)  Dr. Goldberg ordered an X-ray of Plaintiff's left knee, gave Plaintiff a bag of ice, and sent him back to his housing unit.  (Second Am.

Compl. ¶¶51, 66.)  Plaintiff alleges that Dr. Goldberg should have immediately ordered an MRI of his spine along with additional diagnostic testing and treatment.  (Second Am. Compl. ¶51.)

- On March 3, 2021, about a week after his first fall in the shower, Plaintiff saw Dr. DeSantis who diagnosed Plaintiff as being sore from his fall in the shower.  (Second Am. Compl. ¶¶20, 61, 72.)  Plaintiff alleges that Dr. DeSantis misdiagnosed him because a year later he was diagnosed with a bulging disc.  Plaintiff alleges that Dr. DeSantis should have ordered a full set of MRIs including imaging of his lower back, knees, left shoulder and arm.  (*Id.*)  Plaintiff was seen by Dr. DeSantis on two other occasions for pain management treatment purportedly related to Plaintiff's fall.  Plaintiff alleges that Dr. DeSantis refused to order an MRI and would not refer him to an orthopedic specialist. He further argues that Dr. DeSantis failed to upgrade the electronic stimulation device installed in his back.  (*Id.*)

- On March 18, 2021, Plaintiff's began physical therapy for his left knee and lower back. (*Id.* ¶21.)

- On July 21, 2021, five months after his fall, the Plaintiff alleges that he was taken to see Dr. Riley.  (*Id.* ¶52.)  Dr. Riley examined Plaintiff, reviewed Plaintiff's X-rays, and gave him an injection for pain in his left knee.  (*Id.*)  Plaintiff asserts that during this visit, he requested an MRI of lower back and knees to which Dr. Riley purportedly responded by stating "he's the doctor and he doesn't think [Plaintiff] needs an MRI."  (*Id.* ¶52.)

- August 6, 2021, Defendants ordered a neurosurgeon consultation for Plaintiff – for an examination of his spine and the electronic stimulation device installed in his back.  (*Id.* ¶29.)

- On August 11, 2021, Plaintiff again saw Dr. Riley at which time Dr. Riley purportedly told Plaintiff "he's not ordering any MRIs for … injuries to [Plaintiff's] knees, lower back, left should and arm." (*Id.* ¶52.)

- On September 1, 2021, Plaintiff saw Physician Assistant Walsh for pain management treatment. (*Id.* ¶33.)

- On September 9, 2021, Plaintiff slipped for a second time in the handicapped shower. (*Id.* ¶35.) Thereafter, he was taken to the prison Medical Department where he was seen by Physician Assistant Kim White. (*Id.*) Physician Assistant White worked for the Department of Corrections. She purportedly gave Plaintiff a shot in his left arm for pain, provided a bag of ice for swelling, and sent Plaintiff back to his housing unit. (*Id.*) Plaintiff alleges that she failed to order an X-ray or MRI for his injuries. (*Id.*)

- On September 17, 2021, Plaintiff went to prison medical unit with complaints of pain and was seen by Physician Assistant Walsh who purportedly diagnosed him with inflammation in the tendon that runs along the shoulder and rotator cuff. (*Id.* ¶¶37, 63.) Physician Assistant Walsh prescribed Prednisone to treat the inflammation. (*Id.*) Plaintiff complains that Dr. Walsh denied Plaintiff's request for a series of MRIs and referral to an orthopedic doctor. Dr. Walsh purportedly diagnosed Plaintiff with arthritis and was of the opinion that Plaintiff did not need to see an orthopedic specialist or have an MRI of his left should or knees. (*Id.*) Plaintiff alleges that Dr. Walsh stated, "Nobody sees an orthopedic specialist for arthritis and there's nothing else he can do for the Plaintiff." (*Id.* ¶63.)

- On October 4, 2021, Plaintiff was transported from the prison to his neurosurgeon's office to be evaluated by his own neurosurgeon, Dr. Louis Cervantes, M.D. (*Id.* ¶38, 52.)

- On January 26, 2022, Plaintiff was taken for an MRI on his spine. (*Id.* ¶40.) On January 27, 2022, Plaintiff again receive an MRI on his spine. (*Id.* ¶41.) On February 27, 2022, Plaintiff received a third MRI on his spine. (*Id.* ¶42.) Dr. Cervantes reviewed the three MRIs and the electronic stimulator device implanted in Plaintiff's. (*Id.* ¶46.)

- On March 25, 2022, Plaintiff received X-rays on his left arm and shoulder. (*Id.* ¶43.)

- On April 12 or 13, 2022, Plaintiff went to the prison medical department for pain in his left knee and was seen by Dr. Bazel. Dr. Bazel reviewed the results of Plaintiff's X-rays and purportedly stated that they showed that nothing was wrong with Plaintiff's left shoulder or knees. (*Id.* ¶58.) Dr. Bazel gave Plaintiff an injection for pain. (*Id.* ¶ 45, 58.) Dr. Bazel purportedly refused to order an MRI of Plaintiff's knees and would not refer to an orthopedic specialist. (*Id.* ¶45, 58.)

- On August 12, 2022, Plaintiff alleges that Dr. Cervantes reviewed the results of his spinal MRIs and diagnosed him with a bulging disc. (*Id.* ¶46.) During the examination, a technician checked the electronic stimulation device installed in Plaintiff's back. (*Id.*) The technician purportedly offered the opinion that the electronic stimulation device could potential be upgraded with a more powerful version that might alleviate Plaintiff's pain. (*Id.* ¶46.) Dr. Cervantes also referred Plaintiff to an orthopedic specialist for an examination. (*Id.*)

- On August 16, 2022, Plaintiff learned that Dr. Anthony Letizio refused to honor Dr. Cervantes' referral for an orthopedic examination. (*Id.* ¶¶47, 59.) Defendant Dr. Letizio is the director of the medical department at S.C.I. Phoenix. (*Id.* ¶10.)

- On September 23, 2022, Plaintiff alleges that Dr. Kaminsky denied his request to be referred to an orthopedic specialist citing his reasoning as being based on the fact that the

director the medical department, Dr. Letizio, had previously denied the request.  (*Id.* ¶61.)
Plaintiff also alleges that Dr. Kaminsky refused to order an MRI.

- On October 19, 2022, and again on November 3, 2022, Plaintiff was seen by Physician
  Assistant Walsh who refused to refer Plaintiff to an orthopedic specialist or request MRIs
  on Plaintiff's knees, left shoulder, and arm.  Physician Assistant Walsh apparently
  diagnosed with arthritis and felt that an orthopedic consultation was unnecessary for
  arthritis.

- Plaintiff avers that as of October 3, 2022 and/or November 17, 2022, he had still not
  received an MRI for his knees or left shoulder and arm.  (Second Am. Compl. ¶¶36, 52,
  61, 73.)

Factual allegations in the Second Amended Complaint do not establish deliberate
indifference to known medical needs on the part of Dr. Bazel, Dr. Goldberg, Dr. DeSantis, Dr.
Riley, Physician Assistant Kaminsky and Physician Assistant Walsh.  Quite to the contrary,
prison medical staff provided medical treatment once Plaintiff arrived in the infirmary after
falling in the shower and on each occasion thereafter.  The question of whether Plaintiff required
an MRI or orthopedic consult at a specific point in time is a question of medical judgment that
does not give rise to a constitutional violation.  *Estelle*, 429 U.S. at 107 ("But the question
whether an X-ray – or additional diagnostic techniques or forms of treatment – [is necessary] is a
classic example of a matter for medical judgment.  A medical decision not to order an X-ray, or
like measures, does not represent cruel and unusual punishment.").

Allegations in the Second Amended Complaint, establish that Plaintiff is upset about not
receiving additional treatment that he believes he should receive or quicker treatment.  For
example, Plaintiff avers that Defendant Doctors and Physician Assistants refused to allow him to

see a neurosurgeon for eight months following his first fall.  However, Plaintiff admits that he

did ultimately see his own neurosurgeon, Louis Cervantes, M.D.  (Second Am. Compl. ¶46.)

Plaintiff also admits that three MRIs of his spine were performed at Dr. Cervantes request.  (*Id.*

¶42, 53. 59.)  Dr. Cervantes evaluated Plaintiff's condition and the electro stimulation device

implanted in his back.  (*Id.*)  Plaintiff's left arm, shoulder and knees were X-rayed following his

slip and fall in the prison shower.  (*Id.* ¶43.)  Plaintiff also received physical therapy. (*Id.* ¶63.)

Allegation in the Second Amended Complaint, appear to suggest that Defendant doctors

diagnosed Plaintiff with arthritis and were of the opinion that he did not need to see an

orthopedic specialist.  (*Id.* ¶63.)

Allegation in the Second Amended Complaint, establish that Plaintiff received medical

care during the entire relevant time.  Plaintiff outlines a disagreement about the course of

medical care and treatment he received which is insufficient to establish deliberate indifference

to his known medical needs.  The fact that Plaintiff did not agree with the course of treatment

does not establish a constitutional violation.  *Spruill*, 372 F.3d at 235 (holding that "mere

disagreement as to the proper medical treatment" is insufficient to state a constitutional

violation); *Monmouth Cnty. Corr. Institutional Inmates*, 834 F.2d at 346.  Moreover, courts will

not second guess whether a particular course of treatment is adequate or proper.  *Parham v.

Johnson*, 126 F.3d 454, 458 n.7 (3d Cir. 1997) (quoting *Inmates of Allegheny Cty. Jail v. Pierce*,

612 F.2d 754, 762 (3d Cir. 1979) (deference is given to prison medical authorities in the

diagnosis and treatment of patients, and courts "disavow any attempt to second-guess the

propriety or adequacy of a particular course of treatment . . . (which) remains a question of sound

professional judgment.")); *Estelle*, 429 U.S. at 105-06 (Medical professionals may exercise

discretion in treatment and allegations of negligent treatment or medical malpractice do not trigger constitutional protections).

Allegations in the Second Amended Complaint asserting legal theories under Section 1983 against Dr. Bazel, Dr. Goldberg, Dr. DeSantis, Dr. Riley, Physician Assistant Kaminsky and Physician Assistant Walsh will be dismissed with prejudice.  Plaintiff's failure to clearly define a lapse in medical care is critical to the evaluation of deliberate indifference. This Court will not scour the record to uncover evidence of inappropriate medical care in an attempt to build Plaintiff's case.  *Doeblers' Pa. Hybrids, Inc. v. Doebler*, 442 F.3d 812, 820 n. 8 (3d Cir. 2006) ("As noted by the Seventh Circuit, 'Judges are not like pigs, hunting for truffles buried in the record.'" *Ecore Int'l, Inc. v. Downey*, 343 F. Supp. 3d 459, 498 (E.D. Pa. 2018).

Plaintiff has now exhausted his third opportunity to refine his pleadings to establish claims against these Wellpath doctors and physician assistants based on purported violations of Section 1983.  Plaintiff has failed to establish a right to proceed; therefore, leave to file a third amended complaint will not be granted.  *Jones v. Unknown D.O.C. Bus Driver & Transp. Crew*, 944 F.3d 478, 483 (3d Cir. 2019) (where inmate plaintiff "has already had two chances to tell his story . . . giving him further leave to amend would be futile.").

**A.3    Plaintiff's Section 1983 Claim against Dr. Letizio Will Survive Defendants' Motion to Dismiss:**

The Court is not prepared to dismiss Plaintiff's Eighth Amendment claim pled under Section 1983 for deliberate indifference against Dr. Anthony Letizio, DO.  Dr. Letizio was employed by Wellpath, LLC, during the relevant time, as the director of the medical department at S.C.I. Phoenix.  (Second Am. Compl. ¶10.)  Dr. Letizio allegedly refused to permit Plaintiff to be seen by an orthopedic specialist after Plaintiff's neurosurgeon, Dr. Cervantes, referred the Plaintiff for an orthopedic consult.  (Second Am. Compl. Ex. P, ECF No. 28 page 48.)  Based on

these facts, the Court will permit claims against Dr. Letizio to survive the doctor's motion to dismiss.

**A.4     Claims Asserted in the Second Amended Complaint for Professional Negligence (Medical Malpractice) against Wellpath and Its Doctors or Staff:**

Plaintiff asserts theories of professional negligence (medical malpractice) and vicarious liability against Defendant medical providers.  (Second Amended Compl., ECF No. 28.)  In relationship to his negligence and vicarious liability claims, Plaintiff names Dr. Bazel, Dr. Goldberg, Dr. DeSantis, Dr. Riley, Dr. Letizio, PA Kaminsky and PA Walsh and Wellpath, LLC as Defendants.  (*Id.*)  In order to pursue claims of professional negligence (medical malpractice), Plaintiff is required to file a "certificate of merit" for each defendant against whom he asserts a professional malpractice claim.[7]  Plaintiff was informed of this requirement in a Memorandum that was previously filed by this Court.  *Liz*, 2022 WL 4120264, at 8, n. 11.  This Court specifically explained that if Defendant filed a Second Amended Complaint in which he pursues medical malpractice claims, he must file certificates of merit within 60 days of filing the Second Amended Complaint or seek an extension within the 60-day timeline. *Id.* at 8.  Plaintiff filed a Second Amended Complaint in December 2022.  Thereafter, Plaintiff was further placed on notice of the need to file certifications of merit in April of 2023 when Defendants filed their

---

[7] Rule 1042.3 of the Pennsylvania Rules of Civil Procedure requires an "attorney for the plaintiff, or the plaintiff if not represented" who brings an action based on "an allegation that a licensed professional deviated from an acceptable professional standard" to file a certificate of merit within sixty days of the filing of the complaint.  The certificate should contain one of the following statements: (1) that "an appropriate licensed professional" has supplied a written statement that there is a reasonable probability that the defendant's conduct fell outside acceptable professional standards; (2) that the claim against the defendant is based solely on allegations against other professionals for whom the defendant is responsible; or (3) that expert testimony is unnecessary for prosecution of the claim. Pa. R. Civ. P. 1042.3(a).  The rule allows for a sixty-day extension of the period for filing a certificate of merit if such a request is made before the expiration of the deadline and good cause is shown.  *See* Pa. R. Civ. P. 1042.3(d).

Notice of Intention to Enter Judgment for Failure to File a Certification of Merit.  (Notice, ECF No. 42.)

Plaintiff has been provided with an ample opportunity to obtain and file certificates of merit in compliance with Pennsylvania law.  Plaintiff has repeatedly been placed on notice of the requirement under Pennsylvania law for filing certificates of merit.  It has been more than a year and a half since Plaintiff filed his Second Amended Complaint, yet he has failed to present a certificate of merit for any of the Defendants against whom he brings malpractice claims.  Therefore, the claims that Plaintiff asserts on a theory of professional negligence (medical malpractice) will be dismissed with prejudice.  *Folk v. Bureau of Prisons*, 2021 U.S. App. LEXIS 23798, *6 (3rd Cir. July 29, 2021) (Finding that the District Court properly dismissed the professional negligence claim because Plaintiff did not file a certificate of merit or claim that a certificate of merit was unnecessary).

Plaintiff has now exhausted his third opportunity to refine his pleadings to establish claims against the various medical providers who treated him following his two falls in the prison shower.  After being placed on notice, Plaintiff failed to produce the required documentation to proceed with his malpractice claims.  Therefore, Plaintiff's professional negligence claims will be dismissed with prejudice and leave to amend will not be granted as to professional negligence claims.  *Jones v. Unknown D.O.C. Bus Driver & Transp. Crew*, 944 F.3d 478, 483 (3d Cir. 2019) (where inmate plaintiff "has already had two chances to tell his story . . . giving him further leave to amend would be futile.").

**B.    Claims Asserted against the Commonwealth Defendants (The Pennsylvania Department of Corrections and Its Employees):**

**B.1.    Plaintiff Pled Sufficient Facts to Proceed with his Section 1983 Claims Against Defendant Correctional Officers Kopcik, Curley, and Merrideth:**

Plaintiff asserts Section 1983 claims for deliberate indifference to his known medical needs against Correctional Officers Mark Kopcik, Patrick Curley and Steven Merrideth.  (Second Amended Complaint.)  Correctional Officers Kopcik, Curley and Merrideth worked for the Pennsylvania Department of Corrections when the events giving rise to this cause-of-action accrued.  (Second Amended Complaint.)  Therefore, official capacity claims against the Correctional Officer Defendants were previously dismissed with prejudice because the Court found that the Correctional Officers are shielded by Eleventh Amendment immunity.  *Liz*, WL 1017620, at 6.  However, the Court permitted Plaintiff to proceed with individual capacity claims when it previously screened the Amended Complaint.  (*Id.*)  The Court previously found that Plaintiff plausibly pled Section 1983 Eighth Amendment claims against Correctional Officers Curley, Kopcik, and Merrideth when it filed its September 2022 Order and Memorandum.  *Liz*, WL 4120264, at 7.  The same reasoning and logic as set forth in the Court's September Order and Memorandum is appliable to the evaluation of issues presented in the motion to dismiss filed by the Pennsylvania Department of Corrections on behalf of the Correctional Officers.  Therefore, the motion to dismiss filed by Correctional Officers Curley, Kopcik, and Merrideth will be denied.

**B.2.    Plaintiff Failed to Allege Sufficient Facts to Establish a Viable Right to Recover Against Physician Assistant Kim White on Any Legal Theory Pled in the Second Amended Complaint:**

Physician Assistant Kim White is a Defendant medical provider who worked for the Pennsylvania Department of Corrections.  Plaintiff asserts legal theories of professional

negligence in the form of a medical malpractice claim against Physician Assistant White.

Plaintiff also asserts an Eighth Amended deliberate indifference claim under Section 1983.

Plaintiff was required to file a certificate of merit in relationship to any professional negligence (medical malpractice) claim that he advanced against Physician Assistant White. (Roman Numeral III §A.4 hereinabove.)  To date, Plaintiff has failed to file a certificate of merit to address allegations of malpractice allegedly committed by Physician Assistant White.  The Court has already dismissed professional negligence (medical malpractice) claims asserted against doctors and physician assistants employed by Defendant Wellpath because Plaintiff failed to file a certificate of merit.  The same logic, reasoning, and justification for dismissing claims brought against Defendants who are employed by Wellpath is applicable to Physician Assistant White.  (Roman Numeral III §A.4 hereinabove.)  For all of the reasons set forth in the discussion hereinabove, claims of professional negligence (medical malpractice) will be dismissed from the Second Amended Complaint.

Eighth Amendment claims of deliberate indifference under Section 1983 brought against Physician Assistant White will also be dismissed from the Second Amended Complaint with prejudice and without leave to amend.  As previously discussed hereinabove, the Court will not second guess the sound judgment of the medical professionals who provided Plaintiff with care. Plaintiff fails to assert facts to establish deliberate indifference that rises to the level of a Constitutional violation because the allegations set forth in the Second Amended Complaint establish that PA White provided medical care.  She purportedly gave Plaintiff a shot in his left arm for pain, provided a bag of ice for swelling, and sent Plaintiff back to his housing unit. (Second Am. Compl. ¶35.)  Any disagreement surrounding whether Defendant PA White should have ordered an X-ray or MRI does not establish a Constitutional violation.

**B.3.    Sovereign Immunity Bars Claims Asserted in the Second Amended Complaint that are Based on a Legal Theory of Ordinary Negligence:**

Plaintiff asserts claims based on a legal theory of ordinary negligence and vicarious liability against the Pennsylvania Department of Corrections and Defendant Correctional Officers Mark Kopcik, Patrick Curley, and Steven Meredith.  As previously mentioned hereinabove, Defendant Correctional Officers worked for the Pennsylvania Department of Corrections.  Therefore, the principle of sovereign immunity works to bar state common law claims of negligence brought against Defendant Correctional Officers and claims of vicarious liability asserted in relationship to their conduct against the Pennsylvania Department of Corrections.

In general, employees of the Commonwealth of Pennsylvania acting within the scope of their duties enjoy sovereign immunity.  *Angle v. Smith*, No. 22-cv-0033, 2023 U.S. Dist. LEXIS 20727, at 21-22 (W.D. Pa. Feb. 7, 2023) (citing *Walton v. Harkleroad*, No. 13-cv-1109, 2016 U.S. Dist. LEXIS 28017, at *7 (W.D. Pa. Mar. 3, 2016) (citing 1 Pa. C.S. § 2310)).  Under Pennsylvania law:

> Conduct of [an employee] is within the scope of employment if, but only if: (a) it is of the kind he is employed to perform; (b) it occurs substantially within the authorized time and space limits; (c) it is actuated, at least in part, by a purpose to serve the [employer], and (d) if force is intentionally used by the [employee] against another, the use of force is not unexpectable by the [employer].

*Fought v. City of Wilkes-Barre, Pennsylvania*, 466 F. Supp.3d 477, 521 (M.D. Pa. 2020) (quoting Restatement (Second) of Agency § 228(1) (1958)).  An employee can be found to be acting within the scope of their employment even where the employee acts intentionally or criminally.  *Tibbens v. Snyder*, No. 18-cv-2112, 2020 U.S. Dist. LEXIS 111262, at *12 (M.D. Pa. June 24, 2020).  Conduct falls outside the scope of employment if the conduct is done in an outrageous manner.  *Abney v. Younker*, No. 13-cv-1418, 2019 U.S. Dist. LEXIS 172952, at *9

(M.D. Pa. Oct. 3, 2019), report and recommendation adopted, No. 13-cv-01418, 2020 U.S. Dist. LEXIS 16545 (M.D. Pa. Jan. 30, 2020).

The Pennsylvania General Assembly "has waived sovereign immunity for claims of negligence" in ten narrowly defined categories of conduct. *Id.* (citing 42 Pa. C.S. § 8522(b)). Therefore, Plaintiff's claim must fall within one of these ten exceptions listed in Section 8522(b) of the Act: (1) Vehicle liability, (2) Medical-professional liability, (3) Care custody or control of personal property, (4) Commonwealth real estate, highways and sidewalks, (5) Potholes and other dangerous conditions, (6) Care, custody or control of animals, (7) Liquor store sales, (8) National Guard activities, (9) Toxoids and vaccines, and (10) Sexual abuse. 42 Pa. C.S. § 8522(b).

Plaintiff fails to cite to any of the exceptions to sovereign immunity identified in Section 8522(b) as establishing grounds for liability. Plaintiff accuses Defendant correction officers of delaying medical treatment by either not taking him to the prison medical department after he fell or by telling him to return to his housing unit prior to being seen by prison medical staff. (Second Am. Compl. ¶¶22, 35.) These factual averments do not establish an act or omission that falls within any of the ten exceptions to sovereign immunity set forth in Section 8522(b). Therefore, Plaintiff cannot proceed on legal theories of ordinary negligence asserted in the Second Amended Complaint against Defendant Correctional Officers. Since the Court has dismissed claims of negligence against the Defendant Correctional Officers, claims of various liability arising from their alleged acts or failure to act will also be dismissed. The Court will also dismiss any claim for corporate negligence based on an alleged failure to train, supervise or enact policies and procedures to prevent Defendant Correctional Officers alleged negligent conduct.

For the reasons set forth above and explained hereinabove, the Court concludes that any further amendment would be futile.  The Court will not grant leave to amend and permit Plaintiff to file a third amended complaint.  *See Jones v. Unknown D.O.C. Bus Driver & Transp. Crew*, 944 F.3d 478, 483 (3d Cir. 2019) (where inmate plaintiff "has already had two chances to tell his story . . . giving him further leave to amend would be futile."); *Tolbert v. Boyce*, 2024 U.S. Dist. LEXIS 104250, *25 (W.D. Pa. June 12, 2024).

## C.    Additional Matters:

Plaintiff recently filed a motion to amend his Second Amended Complaint due to "new facts and evidence which have recently come to light."  (Motion, ECF No. 68).  Shortly thereafter, Plaintiff withdrew his motion to amend.  (Motion, ECF No. 69).  Most recently, Plaintiff has filed a motion to put this Court on notice that he seeks to find an attorney.  (Motion, ECF No. 71.)  Plaintiff's motion was filed in May of 2024, no attorney has entered an appearance on Plaintiff's behalf.  Therefore, the Court will deny Plaintiff's outstanding motion as moot.  Plaintiff will be provided with a thirty (30) day period of time to file a Third Amended Complaint to assert claims that were not dismissed from this action against Defendants who remain in this action – Mark Kopcik, Patrick Curley, Steven Meredith and Anthony Letizio, DO.

## IV.    CONCLUSION:

For the foregoing reasons, the Court will grant the motion to dismiss filed by Defendants Wellpath, LLC, Dr. Bazel, Dr. Goldberg, Dr. DeSantis, Dr. Riley, Physician Assistant Kaminsky and Physician Assistant Walsh.  The Court will also grant the motion to dismiss filed by Physician Assistant Kim White.  Claims asserted against these Defendants will be dismissed from the Second Amended Complaint.

The motion to dismiss filed by Defendant Anthony Letizio, DO, as it relates to Section 1983 claims for deliberate indifference will be denied.  The motion to dismiss filed by Defendants Mark Kopcik, Patrick Curley, and Steven Merrideth will be denied.

An appropriate Order will follow.

BY THE COURT:

Judge John Milton Younge
JOHN MILTON YOUNGE, J.